**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARY LOU WALEN,

      Plaintiff,

v.

THE UNITED STATES Of AMERICA, *et al.*,

      Defendants.

Civil Case No.: 1:15-CV-01718
Judge Beryl A. Howell

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION FOR SUMMARY JUDGMENT

      Defendant the District of Columbia (the "District"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56(c), respectfully moves this Honorable Court for an Order granting judgment in its favor.  As explained the accompanying memorandum of points and authorities, incorporated herein by reference, the Court should grant judgment in the District's favor as undisputed facts demonstrate that plaintiff's claims fail as a matter of law for the following reasons:

  I.    Plaintiff's injuries were caused by an act of God, not by the District.

  II.    The District is protected from Plaintiff's claims by the doctrine of sovereign immunity.

  III.    Plaintiff has no competent expert report to show that DDOT deviated from the applicable standard of care.

  IV.    Plaintiff's decision to walk across a bridge during a state of emergency caused by superstorm Sandy, constituted contributory negligence, which is an absolute bar to her recovering from the District.  Plaintiff also assumed the risk that the storm would injure her.

Accompanying this Motion is a Statement of Material Facts not in dispute.

Also attached hereto is a proposed Order for this Court's consideration.

DATE: November 7, 2018

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Michael K. Addo*
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/ *Benjamin E. Bryant*
BENJAMIN E. BRYANT [1047632]
Assistant Attorney General
Civil Litigation Division Section IV
441 Fourth Street, NW, Suite 630 South
Washington, D.C. 20001
202-724-6652
202-730-0624 (fax)
benjamin.bryant@dc.gov

*Attorneys for Defendant District of Columbia*

## Certification of Service

The undersigned counsel hereby certifies that on November 7, 2018, he caused this

Motion to be filed with the Court via ECF electronic filing, which caused copies of same to be

served on all counsel of record.

DATE: November 7, 2018

/s/ *Benjamin E. Bryant*
BENJAMIN E. BRYANT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARY LOU WALEN, | Civil Case No.: 1:15-CV-01718 |
|      Plaintiff, | Judge Beryl A. Howell |
| v. | |
| THE UNITED STATES Of AMERICA, *et al.*, | |
|      Defendants. | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT</u>

## **TABLE OF CONTENTS**

Table of Authorities.................................................................................................................ii

Introduction..........................................................................................................................1

Standard of Review...............................................................................................................3

Argument

     I.     Plaintiff's injuries were caused by an Act of God, not by the District............................................................................................4

          a.     Superstorm Sandy was an exceptional and extraordinary natural phenomenon.............................................................4

          b.     The District was not at fault for the harm caused by Superstorm Sandy.................................................................7

          c.     Superstorm Sandy could not be controlled by the District....9

     II.     The District is protected from Plaintiff's claims by the doctrine of sovereign immunity.......................................................................10

          a.     Plaintiff cannot second-guess the District's tree inspection and removal policies.......................................................11

     III.     Plaintiff has no competent expert report to show that DDOT deviated from its duty of care.........................................................14

          a.     Plaintiff must have expert testimony to demonstrate how the District deviated from its duty of care..........................14

          b.     Plaintiff's liability expert report is completely silent about the District's actions........................................................15

          c.     Bloch's report contains opinions which have no factual basis...............................................................................18

     IV.     Plaintiff's decision to walk across a bridge during a major storm, Sandy, constituted contributory negligence, which is an absolute bar to her recovering from the District.................................................22

          a.     Plaintiff assumed the risk that the storm would injure her.............................................................................26

     CONCLUSION.......................................................................................................27

## TABLE OF AUTHORITIES

RULES

Fed. R. Civ. P. 56(c)..................................................................................................3

CASES

*Am. Nat. Red Cross v. Vinton Roofing Co., Inc.*, 629 F. Supp. 2d 5 (D.D.C. 2009)..........................9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................................3

*Aguehounde* v. *District of Columbia,* 666 A.2d 443 (D.C. 1995)....................................................10

*Barnard-Curtiss Co. v. U.S. for Use & Benefit of D.W. Falls Const. Co.*, 257 F.2d 565 (10th Cir. 1958)..................................................................................................................4

*Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195 (D.C. 1991)..........................................14,15

*Berkovitz v. United States*, 486 U.S. 531 (1988)..................................................................11

*Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839 (D.C. Cir. 2007)....................................15

*Briscoe v. Dist. of Columbia*, 62 A.3d 1275 (D.C. 2013) ......................................................26

*Cater v. Greenspan*, 304 F.Supp.2d 13 (D.D.C. 2004)............................................................3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)....................................................................3

*Chandler v. District of Columbia*, 404 A.2d 964 (D.C. 1979)........................................................13

*Clark v. District of Columbia*, 708 A.2d 632 (D.C. 1997)..........................................................15

*Daigle* v. *Shell Oil Co., 972* F.2d 1527 (10th Cir. 1992)........................................................10

*Dalehite v. United States*, 346 U.S. 15 (1953)......................................................................11

*District of Columbia v. Cooper*, 445 A.2d 652 (D.C.1982) ........................................................22

*District of Columbia v. Freeman*, 477 A.2d 713 (D.C. 1984) ....................................................15

*District of Columbia v. Mitchell*, 533 A.2d 629 (D.C. 1987)......................................................26

*District of Columbia* v. *North Wash. Neighbors, Inc., 367* A.2d 143 (D.C. 1976)..........................10

*District of Columbia* v. *Pace,* 498 A.2d 226 (D.C. 1985).. .....................................................10,12

*District of Columbia v. Peters*, 527 A.2d 1269 (D.C. 1987)... ........................................................15

*Dougherty v. Chas. H. Tompkins Co.*, 240 F.2d 34 (D.C. Cir. 1957)............................................26

*Durphy v. Kaiser Foundation*, 698 A.2d 459 (D.C. 1997)............................................................25

*Fergusson v. Brent*, 12 Md. 9 (1858)........................................................................................4

*Garner v. Ritzenberg*, 167 A.2d 353 (D.C. 1961).. .....................................................................8

*George Washington Univ. v. Waas*, 648 A. 2d 178 (D.C. 1994)...................................................22

*Gleeson v. VA. Midland Ry. Co.*, 140 U.S. 435 (1891).. ...............................................................9

*Katkish v. District of Columbia*, 763 A.2d 703 (D.C. 2000)...........................................................15

*Lyons v. Barrazotto,* 667 A.2d 314 (D.C.1995)..........................................................................22

*Mark Downs, Inc. v. McCormick Properties, Inc.*, 51 Md. App. 171 (1982). ...................................4

*Memphis & C. R. Co. v. Reeves*, 77 U.S. 176, 189 (1869).. ...........................................................4

*Morgan v. District of Columbia*, 468 A.2d 1306 (D.C. 1983)...................................................12-13

*Morrison v. MacNamara*, 407 A.2d 555 (D.C. 1979).. .................................................................25

*Nealon* v. *District of Columbia* , 669 A.2d 685 (D.C. 1995)... ...................................................10,11

*Owen v. Independence*, 445 U.S. 622 (1980)...........................................................................12

*Pepsi Cola Co. v. Waddell*, 304 A.2d 630 (D.C. 1973)................................................................14

*Phillips v. Fujitec Am.*, Inc., 3 A.3d 324 (D.C. 2010)...............................................................25,26

*Poyner v. Loftus*, 694 A.2d 69 (D.C. 1997)............................................................................22,23

*Rustin v. District of Columbia*, 491 A.2d 496 (D.C. 1985)............................................................12

*Sinai v. Polinger Co.*, 498 A.2d 520 (D.C. 1985).......................................................................22

*Stager v. Schneider*, 494 A.2d 1307 (D.C. 1985)...................................................................22,25

*United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011).............................................................22

*Varner v. District of Columbia*, 891 A.2d 260 (D.C. 2006)...........................................................14

*Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002)....................................3

*Watts v. Smith*, 226 A.2d 160 (D.C. 1967)....................................................................4,9

*Wise v. United States*, 145 F. Supp. 3d 53 (D.D.C. 2015)... ...........................................16

## INTRODUCTION

Defendant the District of Columbia ("the District") respectfully submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment.

At approximately 3:10pm on October 29, 2012, Plaintiff was walking across the Connecticut Avenue bridge that spans the Klingle Valley when she was struck and injured by parts of a tree that fell on her. (ECF DKT # 1, Pl. Compl., *passim*).  At the time of Plaintiff's injury, the named storm Sandy[1] was passing through the District of Columbia.  On October 26, 2012 -- three days before Plaintiff's injury-- Mayor Gray declared a State of Emergency.  On October 28th, Mayor Gray requested that the President make a Disaster Declaration for the District of Columbia and called for residents to "stay indoors."

Plaintiff nonetheless chose to walk across the Klingle Valley Bridge during a period of high winds caused by the storm, which she thought would arrive "that evening."  Plaintiff testified that she thought she could complete an errand before the storm arrived, but she testified that she "knew that there was a hurricane coming." Plaintiff has no memory of the incident, and no fact witness has described the condition of the tree or tree limbs that struck Plaintiff.

Superstorm Sandy, not the District of Columbia, is responsible for Plaintiff's injuries.  Second, District is protected by sovereign immunity from Plaintiff's claim that the District's tree maintenance and inspection program was negligent. Third, Plaintiff has no competent expert testimony to show that the District deviated from its duty of care in inspecting maintaining trees: Plaintiff's expert arborist wrote a report about the National Park Service, and he does not even mention the District.  Additionally, Plaintiff's expert arborist's report is an inadmissible net opinion.  Finally, Plaintiff's decision to walk across a bridge during a major wind storm

---

[1] Case law refers to this storm variously as "Superstorm Sandy" and "Hurricane Sandy."  The District refers to it as Superstorm Sandy in this brief.

constitutes contributory negligence, which constitutes a bar to her recovery.  The District is entitled to summary judgment on each of these four issues.

## **STANDARD OF REVIEW**

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact." *Cater v. Greenspan*, 304 F.Supp.2d 13, 20 (D.D.C. 2004).

Indeed, "[a] moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id. at* 242, 247–248 (emphasis original).

<u>**ARGUMENT**</u>

**I.** **Plaintiff's injuries were caused by an act of God, not by the District.**

The historic 2012 Superstorm Sandy was an act of God for which the District cannot be held liable as a matter of law, and this act of God alone caused Plaintiff's injuries. The District is therefore entitled to summary judgment.

An act of God is "an unprecedented and extraordinary occurrence of unusual proportions [that] could not reasonably have been foreseen by the parties." *Barnard-Curtiss Co. v. U.S. for Use & Benefit of D.W. Falls Const. Co.*, 257 F.2d 565, 568 (10th Cir. 1958). To invoke the Act of Defense, a defendant must therefore show 1) an exceptional or extraordinary natural phenomenon 2) absent human contribution 3) that was unforeseeable by a reasonable person. *Watts v. Smith*, 226 A.2d 160, 162 (D.C. 1967). If harm is caused by an act of God, no recovery may be had for such harm. *See, e.g., Memphis & C. R. Co. v. Reeves*, 77 U.S. 176, 189, 19 L. Ed. 909 (1869). However, an act of God will excuse a defendant only if the defendant is not also at fault. *Mark Downs, Inc. v. McCormick Properties, Inc.*, 51 Md. App. 171, 187 (1982) (citing *Fergusson v. Brent*, 12 Md. 9, 31 (1858). In other words, to relieve a defendant of liability, "the act of God must be the immediate cause of the loss, and without which it would not have occurred." *Mark Downs, Inc.*, 51 Md. App. at 171 (quoting *Fergusson v. Brent*, 12 Md. at 31) (internal quotation marks omitted).

> **a.** **Superstorm Sandy was an exceptional and extraordinary natural phenomenon.**

On October 25, 2012 -- four days before Plaintiff's injury -- Washington Post meteorologist Jason Samonow wrote that "Hurricane Sandy" had a 30% chance of being a "worst case" scenario, with peak sustained winds of 50-70 MPH, and a 45% chance of sustained winds of 35-50 MPH. Jason Samonow, *Hurricane Sandy scenarios for Washington, D.C.*, THE

WASHINGTON POST (October 25, 2012).[2]  Samonow predicted only a five percent chance that wind gusts would not reach at least 40 MPH. *Id.*

Given such dire predictions, on October 26, 2012, Mayor Gray declared a State of Emergency. Ex. A, Mayor's Order 2012-186, "Declaration of Public Emergency", dated 10/26/2012.

The next day, on October 27, 2012, Washington Post reporter Samanow wrote in an article called "Today is the day to prepare for Hurricane Sandy":

> Sunday into Sunday night will offer the chance as well although rain chances increase and winds slowly ramp up during that time. **The worst part of the storm, increasingly, looks to be from Monday through Tuesday in the Washington, D.C. area.**

Jason Samonow, *Today is the day to prepare for Hurricane Sandy*, THE WASHINGTON POST (October 27, 2012) (emphasis added).[3]

Plaintiff's injury occurred that Monday, October 29, 2012, "the worst part of the storm" in the District.  On October 28th -- the day before Plaintiff's injury -- Mayor Gray requested that the President make a Disaster Declaration for the District of Columbia. Ex. D, Request for Disaster Declaration, dated 10/28/2012.  The District went so far as to open five relief centers on Monday, October 29th for people to shelter in. *Relief Centers To Open At Noon,* NBC4 (October 28, 2012).[4]

On October 29th, the Washington Post's meteorologists noted at 1:17PM, only a few hours before Plaintiff's injury at approximately 3PM:

> Hurricane Sandy is cranking up its fury level. Winds across the D.C.

---

[2] https://www.washingtonpost.com/blogs/capital-weather-gang/post/hurricane-sandy-scenarios-for-washington-dc/2012/10/25/0ebdb0f2-1ec5-11e2-9cd5-b55c38388962_blog.html?utm_term=.e2caad60d263 (last accessed on October 2, 2018).

[3] https://www.washingtonpost.com/blogs/capital-weather-gang/post/today-is-the-day-to-prepare-for-hurricane-sandy/2012/10/27/f62dacc2-203b-11e2-9cd5-b55c38388962_blog.html?utm_term=.5b83237ac67c (last accessed on October 2, 2018).

[4] https://www.nbcwashington.com/news/local/Relief-Centers-To-Open-At-Noon-176198141.html
 (last accessed on October 2, 2018).

area are currently sustained in the 25 to 35 mph range, with gusts near and past 40 mph. Winds will continue to increase through the afternoon, perhaps most noticeably in those gusts.

**The potential for damage and associated power outages is now growing considerably and will continue to do so through the afternoon.**

Differences in timing of increasing wind across the area are fairly marginal thanks to how large Hurricane Sandy's circulation is, but as we get toward sunset, there is a good chance for at least areas of sustained winds near or above tropical storm force, with gusts potentially approaching 70-80 mph.

Ian Livingston, *Winds increasing in D.C. area as Sandy approaches, worst arrives around evening*, THE WASHINGTON POST (October 29, 2012) (emphasis original).[5]

By 9:15 AM on October 29th, the Washington Post reported:

Rain has overspread the entire metro region, with heavy rain along and east of I-95. Heaviest rainfall totals so far (in the area) have been in the counties on the west side of the Bay, where 1-2" has already fallen. Winds, so far, are not too bad, sustained at around 20 mph, with some gusts over 30 mph in the region, highest east. They will steadily pick up this morning and become dangerous this afternoon.[...]

Dan Stillman, *D.C. area forecast*, THE WASHINGTON POST (October 29, 2012).[6]

The day's forecast called for "Rain becomes heavy with damaging wind gusts to near 45-60 mph." *Id.*

Local television coverage of the Storm was even more stark in its warnings.  On Sunday, October 28th, NBC4's television meteorologist stated that "the biggest impact will be tomorrow... tomorrow is the day we have to watch out for." NBC4 video segment, *Historic Storm Pounds*

---

[5] https://www.washingtonpost.com/blogs/capital-weather-gang/post/winds-increasing-in-dc-area-as-sandy-approaches-worst-arrives-around-evening/2012/10/29/dc9302cc-21e8-11e2-ac85-e669876c6a24_blog.html?utm_term=.8fe6dda21c07 (last accessed on October 2, 2018).
[6] https://www.washingtonpost.com/blogs/capital-weather-gang/post/dc-area-forecast-sandy-power-slams-the-nations-capital-downed-trees-dangerous-travel-conditions-and-power-outages-imminent/2012/10/29/644231ce-216d-11e2-ac85-e669876c6a24_blog.html?utm_term=.bfeb6a02eee7 (last accessed on October 2, 2018).

*East Coast* (October 28, 2012).[7]  "Strong winds" and "heavy rain" were predicted, with 30-40 MPH winds by noon Monday. *Id.*

Superstorm Sandy passed through the District on October 29, 2012, the day of Plaintiff's injury.  The following day, Washington Post meteorologist noted that peak wind gusts of "55-65 mph" struck the District. Jason Samenow, *Was Hurricane Sandy well-forecast?,* The Washington Post (October 30, 2012).[8]  Moreover, the meteorological data shows that October 29, 2012 set a precipitation record for that day of the year of 3.85".  Justin Greiser, *Hurricane Sandy recap: Historic storm from storm surge to snow,* The Washington Post (October 31, 2012).[9]  3.85 inches of rain in a single day is an immense amount of rain -- more than the District gets in an average October.[10]

Such a storm constitutes an act of God.

**b.    The District was not at fault for the harm caused by Superstorm Sandy.**

The District did not contribute to Plaintiff's injury, and any finding to the contrary would be based on impermissible speculation.  As explained in Point III, below, there is no competent evidence in the record in this case that indicates negligence by the District in the maintenance or inspection of the tree that struck Plaintiff.  Plaintiff's expert arborist failed to provide anything but pure speculation that the National Park Service had notice of any alleged defect in the tree, and does not even mention the District or DDOT.   Because the District had

---

[7] https://www.nbcwashington.com/weather/video/Late-Sunday-Weather-Forecast-for-Hurricane-Sandy_Washington-DC.html (Last accessed on October 2, 2018).
[8] https://www.washingtonpost.com/blogs/capital-weather-gang/post/was-hurricane-sandy-well-forecast-was-it-over-hyped/2012/10/30/67075e52-22c1-11e2-ac85-e669876c6a24_blog.html?utm_term=.c19039715898 (last accessed on October 3, 2018).
[9] https://www.washingtonpost.com/blogs/capital-weather-gang/post/hurricane-sandy-recap-historic-storm-from-storm-surge-to-snow/2012/10/31/9a7c56d8-2362-11e2-ac85-e669876c6a24_blog.html (last accessed on October 9, 2018).
[10] *The Weather Channel*, "Washington, DC Monthly Weather" (updated on October 9, 2018) https://weather.com/weather/monthly/l/USDC0001:1:US (last accessed on October 9, 2018).

no notice of any defect, nor is there any evidence that the District took any actions that resulted in the tree falling, the derecho is an act of God for which the District cannot be held liable.

In distinguishing between simple "heavy rain" and an act of God, our Court of Appeals has looked for evidence of "widespread destruction." *Garner v. Ritzenberg*, 167 A.2d 353, 354-55 (D.C. 1961). Superstorm Sandy caused widespread in the District and beyond. Superstorm Sandy caused healthy tree limbs to fail in Rock Creek Park. Ex. B, Deposition Transcript of Diana Bramble [excerpt] at 128:12 to 128:14. On October 31, 2012, two days after Plaintiff's injury, National Park Service Supervisory Horticulturalist, arborist Diana Bramble, visited the Klingle Valley Bridge and observed an entire tree that had "fallen from the rain and heavy wind." *Id.* at 101:5 to 101:9. Bramble photographed this tree lying on the valley floor. Ex. I. Photograph taken on October 31, 2012 by Diana Bramble.[11] National Park Service facility manager/ chief of maintenance for Rock Creek Park, Donald Kirk, testified that "Hurricane Sandy brought a lot of trees down. There were trees on roadways and other places." Ex. C, Deposition Transcript of Donald Kirk at 44:5 to 44:6. Just in Rock Creek Park, two buildings were damaged by the storm. *Id.* at 43:14 and 43:18. The storm brought down "more than ten" trees in Rock Creek Park. *Id.* at 94:14 to 94:15.

On December 5, 2012, President Obama declared that a major disaster existed in the District of Columbia. Ex. E, FEMA Disaster Declaration FEMA-4096-DR, dated December 5, 2012. The Declaration was made "due to Hurricane Sandy during the period of October 26-31, 2012," and estimated that millions of dollars in damage had been done to public facilities alone. *Id.* Taken together, the conclusive evidence shows that Superstorm Sandy was an act of God within the District of Columbia. Of course, acts of God are not defined separately based on

---

[11] When provided by the United States during discovery, this photograph's file name was DSCN0451.

narrow geographic delineations like those that separate the District from the rest of the country. Superstorm Sandy caused billions of dollars of damage as it headed north from the District and Maryland into Delaware, New Jersey, and Maryland.  Such a storm is like the "Extraordinary floods, storms of unusual violence, sudden tempests, severe frosts, great droughts, lightnings, [and] earthquakes" that the Supreme Court has recognized as acts of God. *Gleeson v. VA. Midland Ry. Co.*, 140 U.S. 435, 439 (1891).

       **c.**       **Superstorm Sandy could not be controlled by the District.**

" '[A]n Act of God' is the result of the direct, immediate and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention, and is of such character that it could not have been prevented or avoided by foresight or prudence." *Watts v. Smith,* 226 A.2d at 162.  Here, the District did nothing to "subject others... to the effects of nature." *Am. Nat. Red Cross v. Vinton Roofing Co., Inc.*, 629 F. Supp. 2d 5, 9 (D.D.C. 2009).  To the contrary, the Mayor took action to protect its citizens.  In addition to declaring a State of Emergency, on October 28th, Mayor Gray held a press conference at which residents were urged to stay indoors.  The Mayor said, "Let me [be] clear, this storm is unique, large, dangerous and unlike anything our region has ever experienced in a very a long time." Ex. F, Tim Craig, *Hurricane Sandy: D.C. Mayor Gray calls for immediate preparations*, THE WASHINGTON POST (October 28, 2012).[12]  The core defect with Plaintiff's case is that the District could not prevent trees and limbs from falling due to Superstorm Sandy.  It could only vigorously warn its residents to stay indoors until the storm passed, which it did.

Therefore, because Superstorm Sandy was an unforeseeable act of God, and occurred through no fault of the District, this Court should grant the District summary judgment.

---

[12] https://www.washingtonpost.com/local/dc-politics/hurricane-sandy-dc-mayor-gray-calls-for-immediate-preparations/2012/10/28/b4fd613e-212b-11e2-8448-81b1ce7d6978_story.html (last accessed on October 5, 2018).

**II.      The District is protected from Plaintiff's claims by the doctrine of sovereign immunity.**

In the District of Columbia, the doctrine of sovereign immunity acts as a bar to suits challenging the District's "discretionary functions." *Nealon* v. *District of Columbia*, 669 A.2d 685, 690 (D.C. 1995).  The District's tree inspection and removal program was discretionary in nature, and Plaintiff cannot second-guess it in this lawsuit.

The question of whether immunity is available under the doctrine turns on whether the act complained of was discretionary or ministerial.  Acts that are purely ministerial, giving the actor no discretion over their conduct, are not protected under this doctrine. *Id.* at 690.

> Generally, discretionary acts involve the formulation of policy, while ministerial acts involve the execution of policy.  Discretionary acts have also been defined as acts that require personal deliberation, decision and judgment.  They generally have a broad public effect and call for a delicate balancing of competing considerations.  Where there is room for policy judgment and decision, there is discretion.  In contrast, ministerial acts require little or no judgment, and generally constitute mere obedience to orders or performance of a duty in which the municipal employee has little or no choice.

*Id.* (internal quotations and citations omitted); *see also Aguehounde* v. *District of Columbia,* 666 A.2d 443,447 (D.C. 1995) (citing *District of Columbia* v. *North Wash. Neighbors, Inc., 367* A.2d 143, 148 n. 7 (D.C. 1976) (whether a function is discretionary or ministerial is a question going to the subject matter jurisdiction of the trial court)).  Whether a function is discretionary or ministerial is to be determined by the trial judge, not the jury, and the Court of Appeals conducts a de novo review of the trial court's determination of whether or not the action was discretionary. *See Daigle* v. *Shell Oil Co., 972* F.2d 1527, 1537 & 1539 (10th Cir. 1992); *see also District of Columbia* v. *Pace,* 498 A.2d 226, 229 (D.C. 1985) (internal citation omitted).

"Discretionary acts have . . . been defined as acts that require 'personal deliberation, decision and judgment,'" whereas "ministerial acts . . . generally constitute 'mere obedience to

10.

orders or performance of a duty in which the [municipal employee] has little or no choice.'"
*Nealon*, 669 A.2d at 690 (internal quotation omitted).

> **a.    Plaintiff cannot second-guess the District's tree inspection and removal policies.**

Plaintiff's claim against the District consists of a single count of negligence. (ECF DKT #

1, Pl. Compl., Count V, §§ 46 - 52).  Plaintiff claims that the District violated its duty to inspect

and maintain roads, sidewalks, and trees in its control, "failing to keep adequate records of

inspection and maintenance protocols for roads, sidewalks and trees in its control, failing to

remove any and all trees, limbs, branches and/or debris that posed a threat of harm or injury in a

timely manner, and failing to maintain a safe manner of travel along its roadways and

sidewalks." *Id.* at ¶ 48.  Plaintiff took no discovery regarding the District's record keeping, and

Plaintiff's claim against the District is effectively a failure to inspect and remove an allegedly

dangerous tree or tree limb that struck and fell Plaintiff.  The District's tree inspection and

removal protocol are within its sovereign power, and Plaintiff is not permitted to second guess it

in this forum.

Plaintiff deposed only one District employee during this case, DDOT Urban Forestry

Supervisor Forester Munevver Ertem.[13]  Ertem testified that DDOT did not perform routine

inspections of trees in the Klingle Valley. Ex. G, Deposition Transcript of Munevver Ertem

[excerpt] at 12:3.  Instead, DDOT relies on resident reports and complaints to make inspections.

*Id.* at 12:24 to 13:1; 16:8 to 16:10.  The District had to formulate a notice and inspection policy,

and this policy is a "permissible exercise of policy judgment." *Berkovitz v. United States*, 486

U.S. 531, 536–7 (1988) (citation omitted).  "Where there is room for policy judgment and

decision there is discretion." *Dalehite v. United States*, 346 U.S. 15, 35-36 (1953).  To make a

---

[13] Her title in 2012 was Lead Forester. She has since been promoted.

decision regarding the suitable policy to address this need, policy makers must consider such concerns as cost and the allocation of staff and other resources, and is therefore discretionary. *See Owen v. Independence*, 445 U.S. 622, 648 (1980) (Discretionary functions "call for a delicate balancing of competing considerations.").

No one, including Plaintiff's expert arborist Lew Bloch, has shown or even argued that DDOT had a different policy.  Bloch did not even bother to mention the issue.  DDOT's decision to rely on reports and complaints in order to trigger inspections of the tens of thousands of trees under its control falls within its sound discretion.[14]  No evidence in the record exists that anyone ever reported the (unidentified) tree that struck Plaintiff, or any other tree in the vicinity of the Klingle Valley Bridge, in the months before Plaintiff's injuries.  Therefore, there is no evidence that the District violated its standard of inspecting trees that are reported to it by residents or anyone else, and the District's standard for how it inspects its trees and locates trees that require removal is within its discretion.

The District's decisions about how to allocate its limited resources by undertaking expensive tree inspections is the kind of decision that falls within its sound discretion. *See, e.g., District of Columbia v. Pace*, 498 A.2d 229–30 (holding that the "District's decision on whether to establish a plan of improvement is within the area protected by sovereign immunity"). "[P]olicy formulation and judgment-making processes," good or bad, are discretionary in nature. *Rustin v. District of Columbia*, 491 A.2d 496, 500 (D.C. 1985).  This is so because a "city's setting of priorities so that its limited resources can be most effectively allocated to protect the public is a matter of discretion." *Pace*, 498 A.2d at 230, citing *Morgan v. District of Columbia*,

---

[14] Importantly, Plaintiff has never been able to identify with competent evidence which tree struck her, and it is therefore not possible to determine whether the tree was within the exclusive jurisdiction of National Park Service, or in the shared jurisdiction of NPS and the District.

468 A.2d 1306, 1311 (D.C. 1983); *Chandler v. District of Columbia*, 404 A.2d 964 (D.C. 1979) (holding that the city's decision to close certain fire stations to save money constituted a discretionary act).

Because the District's tree inspection policy is discretionary, the District is immune from suit on the basis that this policy failed.  Summary judgment in the District's favor is warranted.

**III.     Plaintiff has no competent expert report to show that DDOT deviated from its duty of care.**

Plaintiff claims that the District violated its duty to inspect and maintain roads, sidewalks, and trees in its control, failed "to keep adequate records," failed to remove dangerous trees, limbs, and branches, and failed to keep its roads and sidewalks safe. (ECF DKT # 1, Pl. Compl., Count V, § 48).  Because Plaintiff has no evidence to support her claim that the District violated its duty of care, the District is entitled to summary judgment.

**a.     Plaintiff must have expert testimony to demonstrate how the District deviated from its duty of care.**

A plaintiff must establish that an alleged negligent act caused her injury – an injury alone is insufficient. *See, e.g., Pepsi Cola Co. v. Waddell*, 304 A.2d 630, 632 (D.C. 1973).  "In an action for negligence, the plaintiff has the burden of proving by a preponderance of the evidence the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury." *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006) (citations omitted)).   Thus, plaintiff must prove that the District had notice of a defect in the tree, had a duty to inspect the tree and to take appropriate action in response to the information gathered from the inspection, that the District did not fulfill that duty, and that her injuries were proximately caused by the District's breach of that duty.  Plaintiff cannot establish that the District violated its duty of care.

 "Where negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C. 1991) (internal citations omitted).  However, a plaintiff may not rely on the common knowledge of the jury "where the

subject presented is 'so distinctly related to some science, profession or occupation as to be beyond the ken of the average lay person.'" *Id.* (internal citation omitted); *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987).

District of Columbia courts require expert testimony in an increasingly "wide variety of situations." *Beard v. Goodyear Tire & Rubber Co., 587 A.2d at 200; see also District of Columbia v. Freeman*, 477 A.2d 713, 719 (D.C. 1984) ("whether a painted crosswalk is sufficient to render a particular intersection reasonably safe is a determination essentially technical in nature," requiring testimony from experts who could place the evidence "in an appropriate context for the jury"). The D.C. Circuit Court of Appeals has repeatedly "affirmed trial court rulings that expert testimony is required to establish the standard of care in negligence cases" involving "issues of safety." *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007). Tree inspections are such a subject.

In cases such as these, the expert's testimony "must clearly relate the standard of care to the practices in fact generally followed by other comparable governmental facilities or to some standard nationally recognized by such units." *Clark v. District of Columbia*, 708 A.2d 632 (D.C. 1997). If a plaintiff fails to present expert testimony in a case requiring it, the Court "must enter judgment for the defendant." *Beard*, 587 A.2d at 200.

Here, Plaintiff has not articulated through her experts or otherwise any standard of care that the District of Columbia breached that caused her injury.

> **b. Plaintiff's liability expert report is completely silent about the District's actions.**

Tree inspection and maintenance is a subject beyond the ken of the average juror. *Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000). Therefore, Plaintiff requires a liability expert to demonstrate (a) what the District's duty of care was, and (b) how the District

deviated from that duty of care.  Plaintiff's liability experts do neither, and this warrants

summary judgment in the District's favor.

Plaintiff provided the expert report of arborist Lew Bloch.[15] Ex. K, Pl. Expert Report by

Lew Bloch.  Bloch opines:

> The tree limb that failed and caused the injuries in this matter had
> been dead, dying, and decaying for several years prior to the incident
> and should have been discovered and the problem abated if the
> regular, required tree inspections had been performed properly.
> Furthermore. In spite of the wind and rain event, this limb would not
> likely have failed if it had been a healthy, viable limb.

*Id.* at page 2.

Bloch bases this opinion on his understanding of *National Park Service* tree inspection and

maintenance protocols, though he did not bother to review the deposition transcripts of the

numerous National Park Service employees deposed in this matter.  Bloch concludes that the

allegedly dead tree limb would have been found "if the regular, required tree inspections had

been performed properly," but his report refers only to *National Park Service's* protocol.  Bloch

argues that *National Park Service* "should have been discovered and the problem abated if the

regular, required tree inspections had been performed properly." Ex. K, Pl. Expert Report by

Lew Bloch, page 3.  These inspections were, per Bloch's report, to be performed by National

Park Service pursuant to "A-123 Internal Control Assessment Program and Tree Management

Action Plan." *Id.* at 2.  Such technical programs and plan, entirely unknown to the average juror,

require expert testimony.  The alleged failed tree or tree limb that struck Plaintiff was not, as

Bloch tacitly acknowledges, an "obvious hazard" that a layman could detect. *See Wise v. United

States*, 145 F. Supp. 3d 53, 61 (D.D.C. 2015) (discussing obvious hazards such as large,

---

[15] Plaintiff also provided a "rebuttal" expert report by a meteorologist who opined on the weather on the day of
Plaintiff's injury. Ex. L, Pl. Expert Rebuttal Report by Thomas E. Downs.  This expert did not opine on DDOT's
duty of care for tree inspection or maintenance, and, as a meteorologist, would not be qualified to do so.

uncovered vents in parking garages, gaps into which pedestrians could fall, damaged playground slides, and flammable, abandoned tanks of motor oil).

Bloch's report makes no mention of the District's/ DDOT's tree maintenance protocols, let alone how the District may have deviated from those protocols.  In fact, Bloch's report makes no mention of the District or DDOT at all.  Therefore, Bloch is entirely unable to opine on whether the District's tree inspection protocol met its standard of care, and he does not attempt to do so.  Without a liability expert to challenge *the District's* tree inspection or maintenance procedures, Plaintiff has no basis for claim that the District deviated from its duty of care.

In *Katkish v. District of Columbia*, 763 A.2d 703*,* Plaintiff told the District that there was a "dead" and "leaning" tree in front of his house, but the District did not immediately remove the tree. *Id.* at 704.  Later, the tree fell on Plaintiff's house and he filed suit against the District for negligence. *Id.*  As in this matter, the plaintiff in *Katkish* retained an expert arborist, but the arborist also "did not specify a national standard or one relating to comparable municipalities." *Id.* at 705.  The lack of expert testimony on the issue before the Court was fatal to the plaintiff's claim of negligence against the District because "expert testimony was necessary to establish the standard of care in this case." *Id.*  The holding in *Katkish* is equally applicable here:

> an average lay person is not capable of discerning when a leaning tree may create a dangerous situation requiring an emergency response and whether the likelihood of the tree falling is related to the condition of the tree, the street, or other circumstances. Therefore, we hold that the trial court did not err in ruling that the standard of reasonable care and maintenance of a dead and leaning tree by a municipality, at least in the non-emergency situation presented here, are beyond the ken of the average person. **Based on the findings of the court that appellant told the District only that there was a "dead" and "leaning" tree in front of his house, we agree that expert testimony was needed to determine the standard of care the District of Columbia needed to meet to abate the situation.**  Because appellant did not provide adequate

> expert testimony as to the standard of care, he failed to carry his
> burden for negligence.

*Id.* at 706 (emphasis added).

Bloch's failure to opine about the District and its duty of care is fatal to Plaintiff's

lawsuit, and the District is entitled to summary judgment.

### c. Bloch's report contains opinions which have no factual basis.

Bloch's report is not only defective because it completely ignores the District and

therefore failed to opine on how the District deviated from its standard of care.  Bloch's report is

also defective in other ways: he wrote his report on August 7, 2017, before any depositions were

completed in this matter.  No one who was deposed in this matter, including Plaintiff, has ever

identified the miscellaneous tree debris in the photographs relied on by Bloch as having struck

Plaintiff.  Bloch conducted no site inspection, did no core samples, and never explained how he

reached the conclusion that the strewn debris in the photographs he includes in his report were

those that struck Plaintiff.  Instead, Bloch states:

> Some of the photos that were provided to me disclosed numerous
> very brittle broken limbs on the sidewalk. **It is my understanding**
> that these were from the limb that caused the injuries.

Ex. K, Pl. Expert Report by Lew Bloch, page 2 (emphasis added).

Bloch is referring to a series of photos taken of the bridge that show a pile of wooden debris, but

no one has ever testified that these photos show the tree parts that struck Plaintiff, or even the

location on the bridge where Plaintiff was struck.[16]  Bloch does not explain the basis for his

"understanding that these were from the limb that caused the injuries," but if he had reviewed the

---

[16] Most of the photographs Bloch includes in his report were taken on October 31, 2012, two days after Plaintiff's injury, by NPS arborist Diana Bramble.  However, the photographs on pages 4 to 6 of Bloch's report *may have* been taken by an MPD photographer who visited the scene on the day of Plaintiff's injury, after Plaintiff was taken to the hospital, but Bloch doesn't say.  The MPD photographer was not deposed, and no one has testified that the debris shown in any of the photographs was that which struck Plaintiff.

depositions in this matter he would know that the statement is completely baseless: National Park

Service Arborist Diana Bramble visited the scene a few days after Plaintiff's injury and took

most of the photographs Bloch relied on. Ex. K, Bloch report, pages 13 to 23.  Yet Bramble did

not testify that she photographed the tree that shed the debris that struck Plaintiff:

> Q.     And it's your opinion that the dead tree was the portion of
>         the tree that hit Ms. Walen?
>
> MR. BRYANT: Objection.
>
> A.     I don't know what portion of the tree hit Ms. Walen. That
>        tree could have fallen after the storm. That was the only
>        dead tree that we saw.

Ex. B, Deposition Transcript of Diana Bramble [excerpt] at 81:18 to 81:23.

At the time of Superstorm Sandy, Bramble was the supervisory horticulturalist for the

entire Rock Creek Park, and an ISA Certified Arborist.  Yet, despite doing a site inspection only

two days after Plaintiff's injury, she was unable to render any of the findings that Bloch made

with far less information.  Bramble testified that it was not possible to determine where the

debris on the bridge came from, though she thought it more likely that they came from the

collapsed tree in the valley than from the standing tree that Bloch identified in his report:

> Q.     Did you form an opinion when you went out to the Klingle
>        Valley Bridge on October 31st, 2012 where the debris on
>        the pedestrian walkway came from?
>
> A.     As I said, we were of the opinion that the debris on the
>        bridge could possibly be from that large tree that fell.
>
> Q.     If you could answer this one yes or no I'd appreciate it.  Did
>        you form an opinion as to where the debris came from?
>
> A.     Yes.
>
> Q.     And without hedging or using the word "possible," what
>        was your opinion?

MR. WALLACE: Objection.

MR. BRYANT: Objection.

A.      I don't know.  Again, it's not hedging. I wasn't there when
        this tree fell.  I don't know for a fact exactly what this
        debris consisted of.  It could have been other branches from
        other trees.  It could have been things that were thrown
        there by other people.  There's trash in the pile.  I mean, it
        can be anything, so I can say it is possible.

Ex. B, Deposition Transcript of Diana Bramble [excerpt] at 83:11 to 84:6.

As noted above, Bramble's photographs show a field of debris on the bridge.  This field

is perhaps twenty yards long. Ex. H, Photograph taken on October 31, 2012 by Diana Bramble[17];

Ex. K, Bloch report, page 14.  Bloch does not explain if or how he determined that all this debris

came from *a single tree*, let alone what tree part in the large debris field was responsible for

injuring Plaintiff.  Based on the facts collected during discovery in this case, he could not have

done so.  Bramble, an arborist who actually did a site inspection shortly after Plaintiff's injury,

was unable to even render opinion on whether the debris came from the same species of tree, let

alone from a single tree:

Q.      Do you know if all the branches, limbs and tree parts that
        are depicted in Exhibit 4-A [showing the bridge debris] are
        from the same tree?

A.      I don't know.

Q.      Based on the photograph marked 4-A can you tell what
        kind of trees these limbs are from?

A.      Based on the photograph, no.

Ex. B, Deposition Transcript of Diana Bramble [excerpt] at 127:18 to 127:25.

As noted above, Bramble also took photographs of a tree that lay on the floor of the

---

[17] When provided by the United States during discovery, this photograph's file name was DSCN0449.

Klingle Valley, completely uprooted at its base. Ex. I, Photograph taken on October 31, 2012 by Diana Bramble.

> Q.  And you don't know whether or not that was the tree that hit Ms. Walen[?]
>
> A.  Correct.
>
> Q.  Do you have an opinion as to that?
>
> A.  I do not.

Ex. B, Deposition Transcript of Diana Bramble [excerpt] at 101:10 to 101:14.

The tree in this photograph (Ex. I, Photograph taken on October 31, 2012 by Diana Bramble) did not disintegrate or shed limbs-- it was uprooted at its base by either wind, wet soil, or both.  Yet Bloch did not even include Bramble's photograph of this tree in his report, and he did not explain how he determined that this tree was not the one that struck Plaintiff.  He merely ignored it, without explanation.

Bloch's report is therefore based on assumption that has no factual basis other than the fact that photographs taken after Plaintiff was removed from the accident show (a) tree parts, and (b) a tree that has a missing limb.  This is simply not enough to establish that the tree with the missing limb shed a limb that struck Plaintiff.  Bloch's failure to supply the "whys and wherefores" for his opinions, his failure to even consider the deposition testimony taken during discovery, and his failure to explain why he believes that the debris on the bridge shows the tree that struck Plaintiff, are fatal flaws in his report.  Bloch should be excluded from testifying at trial, and Plaintiff's lack of competent expert testimony means that she has no evidence that the District violated its duty of care.

IV.     **Plaintiff's decision to walk across a bridge during Superstorm Sandy constituted contributory negligence, which is an absolute bar to her recovering from the District.  Plaintiff also assumed the risk.**

The District of Columbia "is not an insurer of the safety of those who utilize its streets and sidewalks." *District of Columbia v. Cooper*, 445 A.2d 652, 655 (D.C.1982).  A pedestrian "has a duty to exercise reasonable care for the protection of his or her own safety." *Lyons v. Barrazotto,* 667 A.2d 314, 322 (D.C.1995) (internal citations omitted).  A plaintiff who fails to exercise reasonable care interrupts causation, meaning that the alleged tortfeasor's actions are not the proximate cause of the injury. *See United States v. Monzel*, 641 F.3d 528, 535 (D.C. Cir. 2011) (A "bedrock rule of tort law" is that a defendant is only liable for "harms he proximately caused.")  Therefore, a claimant who is contributorily negligent is completely barred from recovery. *George Washington Univ. v. Waas*, 648 A. 2d 178, 180 (D.C. 1994).

Contributory negligence is "the failure to act with the prudence demanded of an ordinary reasonable person under like circumstances." *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985).  It exists when the claimant's faulty conduct is a "substantial factor" in causing the injury. *Id.*  "A party asserting the defense of contributory negligence is required to establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care." *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997).  A plaintiff is negligent when he "was unreasonable in encountering a known risk or a risk of which he should have been aware." *Sinai v. Polinger Co.*, 498 A.2d 520, 525 (D.C. 1985).  When Plaintiff's negligence is a "substantial factor" in causing his injury, contributory negligence bars recovery from the alleged tortfeasor. *Id.* at 527.

Although the question of contributory negligence is generally one for the jury, "where the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn that a trial court may find negligence or contributory negligence as a matter of law." *Id.*

When "the evidence, taken in the light most favorable to the plaintiff, establishes contributory negligence so clearly that no other inference can reasonably be drawn," Summary Judgment is warranted. *Poyner v. Loftus*, 694 A.2d at 70.

Here, Plaintiff was contributorily negligent.  Point I, above, concerning the District's act of God defense, demonstrated that days of intense and ongoing media coverage in both the newspaper and on television led up to Superstorm Sandy's main impact on the District on October 29, 2012.  The Washington Post and the local television stations stated for days that the main impact of Superstorm Sandy would come on October 29, 2012, yet Plaintiff walked right into the storm as it neared its peak.  Plaintiff was aware of the arrival of the storm but chose to disregard the warnings:

> Q.      Do you recall at the time of your injury, the day of your injury, October 29th, 2012, that there was a storm that was coming through the region?
>
> A.      Yes, sir.
>
> MR. ROTH: Just objection to the form. Go ahead.
>
> Q.      Were you aware of that at the time?
>
> MR. ROTH: Same objection. Over objection. Go ahead.
>
> Q.      Did you learn about the storm after you were hospitalized, after you were injured? Or did you know about it before you were injured?
>
> MR. ROTH: Same objection. Go ahead.
>
> THE WITNESS: **I knew that there was a hurricane coming.**

Ex. J, Deposition Transcript of Plaintiff [excerpt] at 67:6 to 67:23 (emphasis added).

Plaintiff testified that she did not know that Mayor Gray had declared a State of Emergency on October 26th. *Id.* at 68:16 to 68:21.

However, Plaintiff also testified:

> Q.    How did you know that there was a hurricane coming?
>
> A.    News. **I believe that it had been in the news for a few days.**
>
> Q.    Do you recall if the news said when the hurricane would arrive?
>
> A.    That evening.
>
> Q.    The evening of the 29th?
>
> A.    Yes.
>
> Q.    Do you recall the conditions outside on the day that you were injured?
>
> A.    No, sir.

*Id.* at 68:23 to 69:9 (emphasis added).

Plaintiff does not recall the weather conditions when she went outside, but wind gusts a few miles south at Reagan Airport reached 60MPH on October 29th. *Id.*  Plaintiff's injury occurred at approximately 3:10PM.[18]  At 2:52PM -- approximately twenty minutes before Plaintiff's injury, Reagan Airport's weather station reported 23MPH sustained wind and 45MPH gusts, with 0.3 inches of rain falling. *Weather Underground*, "Ronald Reagan Washington National, VA: Daily Observations" (October 29, 2012).[19]  As shown in Point I, the rain set a daily precipitation record for October 29th.

Despite these weather conditions, Plaintiff chose to walk across the bridge instead of travelling in an automobile.  Plaintiff's decision to walk across a high bridge surrounded by trees during a storm constitutes contributory negligence. "To establish contributory negligence, the party asserting the defense must prove by a preponderance of the evidence that the opposing

---

[18] This estimate is based on the EMS dispatch time of 3:13PM.
[19] https://www.wunderground.com/history/daily/KDCA/date/2012-10-29?req_city=Washington&req_state=DC&req_statename=District%20of%20Columbia&reqdb.zip=20008&reqdb.magic=1&reqdb.wmo=99999 (last accessed on October 9, 2018).

party's negligence was a substantial factor in causing his or her injury, and that the injury or damage was either a direct result **or a reasonably probable consequence of the negligent act** or omission." *Durphy v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.*, 698 A.2d 459, 465 (D.C. 1997). Being struck by falling tree limbs is a "reasonably probable consequence" of walking outside during a major storm.

Further, Plaintiff's testimony that she did not know that the Mayor had declared a State of Emergency days earlier, and her mistaken belief that the "hurricane" would not arrive until the evening, despite the wind and intense rain, does not absolve her of responsibility. The question is not what Plaintiff knew, but "**what the plaintiff should have known** and acted upon in the exercise of reasonable care for [her] own safety," *Morrison v. MacNamara*, 407 A.2d 555, 566 (D.C. 1979) (emphasis added). Stated another way, "when a party knows or by the exercise of ordinary care *should have known* a particular fact or circumstance," then she is contributorily negligent. *Stager*, 494 A.2d at 1311 (quotation omitted; emphasis original).

The matter of *Phillips v. Fujitec Am.*, Inc., 3 A.3d 324, 329 (D.C. 2010) is instructive. There, the plaintiff chose to crawl out of a malfunctioning elevator despite warnings not do so. The danger of this decision was obvious to any reasonable person. Plaintiff ignored the warnings and plunged down the elevator shaft to her death. The D.C. Court of Appeals held that plaintiff was contributorily negligent as a matter of law. *Id.* The facts in *Phillips* have marked similarities to the present matter: both plaintiffs would have been unhurt had they stayed in place, both plaintiffs ignored the obvious danger of their chosen course of action, and defendants in both matters made efforts to warn the plaintiffs not to take the action they did. In both cases, it was not clear what more the defendant could have done to stop plaintiff from unnecessarily risking their health and safety.

Plaintiff's "unreasonable risk-taking" bars her from recovering from the District. *See District of Columbia v. Mitchell*, 533 A.2d 629, 639 (D.C. 1987) (contributory negligence bar applies to cases of unreasonable risk taking).  Plaintiff simply failed to act with the prudence of a reasonable person in a like situation by not crossing a bridge during a major storm.  Plaintiff was contributorily negligent because she knew there was a severe danger and yet she approached it anyway. *See, e.g., Briscoe v. Dist. of Columbia*, 62 A.3d 1275, 1279 (D.C. 2013) (holding a party is charged with constructive notice based on the totality of the circumstances, including, the length of time the danger existed, the severity of the danger, and whether the danger was obvious).  No reasonable jury could find in her favor, and Summary Judgment is warranted.

> a.      **Plaintiff also assumed the risk.**

Similarly, Plaintiff unreasonably assumed the risk of being injured by walking into the storm.  Assumption of risk bars recovery under a negligence claim if Plaintiff voluntarily accepted a subjectively known risk prior to any harm occurring. *Morrison v. MacNamara*, 407 A.2d at 566.  Unlike contributory negligence which focuses on the reasonableness of the plaintiff's behavior, assumption of risk turns on the voluntariness of the behavior.  *See Phillips*, 3 A.3d at 329.  Where contributory negligence looks at actual or constructive knowledge, assumption of risk depends on the plaintiff's subjective knowledge of risk. *Id.*  The elements of the assumption of risk are clear: "first, knowledge of the danger and second, a voluntary exposure to that known danger." *Dougherty v. Chas. H. Tompkins Co.*, 240 F.2d 34, 35-36 (D.C. Cir. 1957).  In this case, Plaintiff's conduct satisfies both elements.

For much the same reasons described above, Plaintiff understood the risk of the storm. She knew about the State of Emergency and should have known of the danger Superstorm Sandy posed to pedestrians, especially those on bridges.  She nonetheless chose to walk across

the bridge during the storm and was injured.  Plaintiff, not the District, chose to expose her to the danger of the storm.  Her claim is therefore also barred by the doctrine of assumption of the risk.

## CONCLUSION

For all of the above reasons, summary judgment should be entered in favor of the District of Columbia, dismissing Plaintiff's Complaint against it with prejudice.

DATE: November 7, 2018                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Michael K. Addo*
MICHAEL K. ADDO [1008971]
Chief, Civil Litigation Division Section IV

/s/ *Benjamin E. Bryant*
BENJAMIN E. BRYANT [1047632]
Assistant Attorney General
Civil Litigation Division Section IV
441 Fourth Street, NW, Suite 630 South
Washington, D.C. 20001
202-724-6652
202-730-0624 (fax)
benjamin.bryant@dc.gov

*Attorneys for Defendant District of Columbia*

MARY LOU WALEN,

       Plaintiff,

v.

THE UNITED STATES Of AMERICA, *et al.*,

       Defendants.

Civil Case No.: 1:15-CV-01718

## **ORDER**

Upon consideration of Defendant District of Columbia's Motion for Summary Judgment, any opposition thereto, and the entire record herein, it is on this _____ day of _____, 2018:

ORDERED that the Motion is hereby GRANTED, and it is

FURTHER ORDERED that Plaintiff's claims against the District of Columbia are hereby DISMISSED WITH PREJUDICE.

SO ORDERED.

_____
Judge Beryl A. Howell
United States District Judge