## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARY LOU WALEN** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **vs.** | : **Case No.: 1:15-CV-01718-BAH** |
| | : |
| **THE UNITED STATES OF** | : |
| **AMERICA,** *et, al.* | : |
| | : |
| **Defendants.** | : |

## PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff Mary Lou Walen, by and through undersigned counsel, John J. Yannone, Esq. and Price Benowitz LLP, hereby files this Opposition to Defendant District of Columbia's Motion for Summary Judgment and states the following in support thereof:

## INTRODUCTION

On October 29, 2012 at approximately 3:10 p.m., Plaintiff was walking across the Connecticut Avenue Bridge spanning the Klingle Valley when the branch of a nearby dead and decaying tree fell and struck her, causing significant damage to her right leg and upper extremities. At the time of Plaintiff's injury, Hurricane Sandy ("Sandy") was approximately five hours, and 216 miles, away from making landfall in New Jersey, and hazardous conditions from its after effects had not yet begun to affect the D.C. Metropolitan Area.

In reality, when the Plaintiff chose to walk across the Klingle Valley Bridge, Sandy was hours away and the area was subjected to those conditions normally encountered during storms at that time of the year. It was during this period of normal, if not slightly unusual but certainly

not extraordinary, weather conditions that the dead branch of a negligently maintained tree in the Klingle Valley broke and violently struck the Plaintiff.

The District owed a duty to Plaintiff to properly maintain and inspect trees overlooking the District's pedestrian walkways and roads throughout the city. The Defendant breached this duty when it failed to maintain, inspect, or notice the long-dead tree overlooking the Klingle Valley Bridge. As a result of the Defendant's breach of duty, the tree's equally dead branches failed when exposed to inclement weather and ultimately struck Plaintiff, proximately causing severe injuries to her right leg and upper extremities.

The District would like to blame "Superstorm" Sandy for the injuries suffered by Plaintiff rather than the District's failure to properly maintain the trees within the purview of its Urban Forestry Division. However, the storm is simply not a suitable scapegoat for the District to rely on as it was hundreds of miles away at the time of the incident and weather conditions had not yet begun to exhibit the destruction we have all come to associate with Hurricane Sandy. The District also contends that its duties to maintain the trees in and around public ways constitutes discretionary action protected under the doctrine of sovereign immunity, yet fails to recognize the ministerial significance of its own Urban Forestry Division. Defendant then argues that Plaintiff's expert reports delineating the standard of care in inspecting and maintaining trees is bafflingly only applicable to Defendant United States and its National Park Service. Finally, the District hopes to convince this Court that Plaintiff either contributed to her injuries, or assumed the risk, by venturing outside hours before Sandy even began to affect the area. In doing this Defendant relies on the state of emergency declared by Mayor Gray on October 26, 2012, three days before the storm hit, which lasted until November 10, 2012, almost ten days after Sandy had come and gone, in an attempt to persuade the Court that Plaintiff acted unreasonably.

Applying the District's logic regarding declarations of states of emergency, any tortious conduct having occurred between October 26, 2012, and November 10, 2012, would have been barred under the doctrines of contributory negligence and assumption of the risk. Moreover the legal underpinnings of the contributory negligence doctrine further preclude its application to the case at bar.

The District fails to eliminate the overwhelming issues of material fact in dispute strewn throughout this case concerning the actual inspection and maintenance of the tree in question, issues relating to the concurrent jurisdiction of the tree by the Defendants, and questions of differing expert opinions. As such, the Defendant's Motion for Summary Judgment should be denied and the case heard on its merits.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a)-(b), a moving party is only entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and responses to production of documents, together with any affidavits show that there is no genuine issue as to material fact. Cater v. Greenspan, 304 F.Supp.2d 13, 20 (D.D.C. 2004). A genuine issue of material fact exists when a fact would significantly affect the outcome of the case in such a way that a reasonable jury could return a verdict for the non-moving party based on the available evidence. *See Kibunja v. Alturas, LLC*, 856.A.2d 1120, 1127-28 (D.C. 2004).

In considering a motion for summary judgment, the Court is required to view the facts, and draw all reasonable inferences, in a light most favorable to the non-moving party. *See Matshuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996); *Celotex Corp. v. Vatrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Ltd.*, 477 U.S. 242 (1986). Furthermore, summary judgment should not be granted if there is even the slightest doubt as to

3

material fact. *See Westinghouse Elec. Corp. v. Seal & Co.*, 842 F.Supp. 586, 590 (D.D.C. 1994). The Plaintiff is entitled to have the credibility of all his evidence presumed and viewed most favorable to him when assessing any genuine dispute as to material fact.

## ARGUMENT

I.  ## PLAINTIFF SUFFICIENTLY SETS FORTH A PRIMA FACIE CASE FOR NEGLIGENCE

In order to establish a *prima facie* case of negligence a plaintiff must show: (1) that the defendant owed a duty to plaintiff; (2) that the defendant breached their duty; and, (3) that the defendant's breach of duty proximately caused plaintiff's injuries. *Smith v. United States*, 157 F.Supp.3d 32, 40 (D.D.C. 2016). Plaintiff effectively maintains its action for negligence in this case.

The District of Columbia owes a duty to maintain its streets in a condition fit for convenient use and safe against accident to travelers using them. *Husovsky v. United States*, 590 F.2d 944, 950 (D.D.C. 1978). In this case the District of Columbia owed a duty to maintain, inspect, and make safe, the trees lining the Klingle Valley Bridge through the Urban Forestry Division of the District of Columbia Department of Transportation. The District's standard of care must comport with the standard of care applicable to the United States' National Park Service as it is both a national standard of care, and the two entities work concurrently and have concurrent jurisdiction over the Klingle Valley Trees. *See id.* at 949-54; Ex. A, Deposition Testimony of Munevver Erlem at 9:14-25; Defendant's Ex. B, Deposition Transcript of Diana Bramble at 37:16-38:10; *see also* Ex. B, Expert Report of Lew Bloch. Furthermore, Plaintiff, as a pedestrian, is entirely within the class of people intended to be protected by the District in the exercise of this duty.

The District of Columbia breached its duty by failing to properly maintain, inspect, and make safe, the dead and/or dying tree overlooking the Klingle Valley Bridge. The tree whose branch ultimately struck Plaintiff had been dead and/or dying for a significant period of time prior to the date of the occurrence. *See* Ex. B. The specific tree whose limb failed has also been identified by Eric Kimbuende, a witness to the occurrence. *See* Ex. H. This breach of duty is further supported by Plaintiff's weather expert, Thomas Downs', conclusion that the weather conditions in effect at the time of the occurrence would not have been strong enough to cause the branch to fail had it been a live and healthy limb. *See* Ex. E, Thomas Downs Expert Weather Report. This breach of duty is what ultimately led to Plaintiff's injuries.

The District's breach of duty proximately caused Plaintiff's injuries. Had the District's Urban Forestry Division fulfilled its duty to maintain, inspect, and make safe, the trees overlooking the Klingle Valley Bridge, the tree in question would have been discovered at an earlier time and any potential hazards caused by its dead branches could have been abated. However, in light of the District's breach of duty the dead limbs of the tree were caused to fail when exposed to inclement weather. If the tree's limbs were healthy the low wind speeds experienced at the time of the occurrence would not have caused the branches to fail and ultimately injure the Plaintiff. *See id*. Without the Defendant's material breach of duty, Plaintiff would not have been injured.

Plaintiff has established a *prima facie* case for negligence against the District of Columbia, and as such summary judgment is inappropriate unless the Defendant can show that no genuine disputes as to material fact exist in this case, or that a defense barring Plaintiff's claims applies. For the reasons set forth below, the defenses raised by Defendant are unavailing and inapplicable. Furthermore, genuine disputes regarding the actual inspection and maintenance

of the tree in question, questions relating to the concurrent jurisdiction of the tree by the Defendants, and issues of differing expert opinions still exist requiring jury resolution on the merits.

II.     **PLAINTIFF'S INJURIES WERE NOT CAUSED BY AN ACT OF GOD, RATHER THEY WERE CAUSED BY THE NEGLIGENCE OF THE DISTRICT**

Hurricane Sandy had not yet begun to affect the D.C. area at the time of Plaintiff's injuries and thus the weather conditions at the time do not constitute an Act of God.

The District correctly states that an Act of God is "an unprecedented and extraordinary occurrence" of natural phenomena that could not reasonably have been foreseen by the parties. *Barnard-Curtiss Co. v. U.S. for Use & Benefit of D.W. Falls Const. Co.*, 257 F.2d 565, 568 (10th Cir. 1958). Such a defense is only available to a defendant who can show (1) that an exceptional or extraordinary natural phenomenon existed at the time of injury; (2) that such injury was caused absent human contribution; and, (3) that such injury was unforeseeable by a reasonable person. *Watts v. Smith*, 226 A.2d 160, 162 (D.C. 1967). All three conditions must be met and a defendant will not be privy to this defense if they acted negligently and thus contributed to the injury suffered by plaintiff. *See Mark Downs, Inc. v. McCormick Properties, Inc.*, 51 Md. App. 171, 187 (1982) If the harm to plaintiff would not have occurred but for the negligent actions of the defendant, even in the presence of such an extraordinary and exceptional natural phenomenon, the defense is inapplicable. *See id.* at 171.

a.   **At the time of Plaintiff's injuries weather conditions did not constitute exceptional and extraordinary natural phenomena.**

The District's characterization of the weather conditions at the time of Plaintiff's injury is hyperbolic, prejudicial, and unsubstantiated in its repeated attempts to use the totality of Hurricane Sandy as a baseline by which to evaluate Plaintiff's claims. In doing so, the District

attempts to deflect attention away from the real issue – its failure to properly and timely inspect and maintain the tree, which it is concurrently responsible for. As a result, a dead tree branch that should have been removed well before October 29, 2012, violently struck Mrs. Walen, causing significant and serious injuries.

Unusual weather conditions, even if infrequent, do not constitute Acts of God. *See Shea-S&M Ball v. Massman-Kiewit-Early*, 606 F.2d 1245, 1248 (D.D.C. 1979); *Garner v. Ritzenberg*, 167 A.2d 353, 354 (D.C. 1961). Average periods of heavy rain and wind do not create the widespread destruction commonly associated with Acts of God and thus will not excuse the negligent conduct of a defendant. *See* 167 A.2d at 354 (holding that natural phenomena such as flash floods are not Acts of God).

Throughout the District's Motion the Defendant relies on prior predictions regarding the destructive capacity of Sandy as well as the average rainfall and wind speed for October 29, 2012, rather than relying on the *actual* conditions experienced at the time Plaintiff was injured. No one denies the fact that Hurricane Sandy was approaching landfall in the New Jersey area between October 26, 2012, and October 31, 2012, however it is essential that the actual weather conditions at the time of the injury be those conditions exclusively relied on when determining the existence of such an exceptional and extraordinary natural phenomenon constituting an Act of God.

Again and again Defendant refers to Monday, October 29, 2012, in its totality as "the worst part of the storm" but this is a highly misrepresented and extremely prejudicial statement intended to lead the Court astray. The National Hurricane Center noted Sandy's position at 2:00 p.m. and 8:00 p.m. on October 29, 2012. *See* Ex. C, National Hurricane Center Sandy Map. At 2:00 p.m., approximately an hour before Plaintiff was injured, Sandy was approximately 216

miles away from Washington, D.C. *See id*; *see also* Ex. D, National Hurricane Center Latitude/Longitude Calculator (showing the measured distance between the location of Sandy as shown in Ex. C, and Washington, D.C.). Similarly the rain fall and wind speed at 3:00 p.m. that day were measured at .2 inches and 20mph respectively. *See* Ex. E. The peak gusts and wind speeds cited by Defendant, along with the fact that October 29, 2012 had set a precipitation record of 3.85 inches, were all measured hours after Plaintiff was injured and are indicative of the cumulative weather effects of that day rather than the actual conditions at the time of injury. At the time Plaintiff was struck by the negligently maintained tree branch less than half an inch of rain had fallen and wind speeds were only measured at approximately 20mph (with brief gusts up to 40mph), far too weak to cause the tree's limb to fail had it been healthy. These conditions constituted inclement weather normally experienced during storms in the D.C. area and were nothing compared to the record-setting precipitation and high wind speeds experienced approximately *6 hours later* around 10:00 p.m. that night. *See* Ex. E, at Weather Data.

Throughout their Motion, the District repeatedly and purposefully hyperbolizes and mischaracterizes the conditions surrounding Plaintiff's injury by placing undue emphasis on the totality of the storm across multiple hours and days rather than actually focusing on the conditions at the time of injury. Plaintiff does not suggest that Hurricane Sandy was not an exceptional and extraordinary storm that greatly affected many individuals along the eastern sea board. However, the Defendant cannot be allowed to misrepresent the fact that the storm had not actually begun to manifest in the D.C. area at the time of Plaintiff's injury, nor to use the storm as a smokescreen relieving them of their responsibility to properly maintain and inspect the trees within their control. The weather conditions at the time of Plaintiff's injury did not exhibit

extraordinary, or even unusual, qualities and thus the Act of God defense is inapplicable to the case at bar.[1]

### b. The District negligently failed to inspect and maintain the tree that ultimately harmed Plaintiff.

Even if the Court were to consider the weather conditions occurring at the time of Plaintiff's injuries as being an Act of God, the defense is inapplicable as the Defendant's negligence directly contributed to Plaintiff's injuries.

A foreseeable consequence of a defendant's breach of duty, which manifests during an extraordinary natural phenomenon, precludes an Act of God defense. *See American Nat. Red Cross v. Vinton Roofing Co., Inc.*, 629 F.Supp.2d 5, 9 (D.D.C. 2009); 257 F.2d at 568; *Fred Drew Constr. Co. v. Mire, et al.*, 89 A.2d 634, 636 (D.C. 1952). Human interference, or the reasonable absence thereof, on what could otherwise be considered an Act of God precludes said defense. 629 F.Supp.2d at 9. A party's neglectful actions impart a humanizing effect on the injury and remove it from the rules applicable to Acts of God. 89 A.2d at 636. The District has a duty to make independent inspections of trees whose branches hang over public ways in order to ensure the safety of individuals using said public ways. *See* 590 F.2d 944, 950-52.

Employees of the District's Urban Forestry Division knew, or should have known, that the dead and decaying tree, and its branches, near the Klingle Valley Bridge constituted a hazard requiring timely removal in order to prevent injuries such as those suffered by Plaintiff. In *Husovsky*, the plaintiff was driving on Klingle Road when a large tree fell suddenly onto

---

[1] Plaintiff's expert weather report repeatedly states that a branch similar in size to the one that struck the Plaintiff would not have failed when exposed to the weather conditions experienced at the time of the occurrence. *See generally* Ex. E. Downs opines that healthy branches of this size do not fail unless they are subjected to sustained wind speeds of between 61 and 88 MPH. *See id.* at 3. The wind gusts measured at the time of the occurrence do not come close to reaching such speeds. *See id.* It is worth mentioning that Downs' report has been rebutted by Defendant's expert *arborist* who attempts to render *meteorological* opinions which he has absolutely no basis, qualifications, or experience, upon which to base his opinions.

plaintiff's car. *Id*. at 948. The tree showed no outward signs of damage or decay and was located within the area maintained by both the National Park Service and the District. *Id*. at 949. Nevertheless, the Court held that the District owed a duty to maintain its streets in a condition fit for convenient use and safe against accidents to those using them. *Id*. at 950 (citing *District of Columbia v. Woodbury*, 136 U.S. 450, 463 (1890)). Furthermore, in determining whether the District had conformed to its standard of care, the Court found that given the dense forestry surrounding the roadway, a higher standard of care was applicable, one requiring the District to make independent inspections of trees in areas where the natural flora could reasonably constitute a hazard. *See id*. at 951; *Hensley v. Montgomery County*, 25 Md. App. 361 (Md. Ct. Spec. App. 1975).

The Klingle Valley tree branch that struck Plaintiff was within the control of both the District and the National Park Service. According to the deposition testimony of Supervising Forester of the District of Columbia Department of Transportation's ("DDOT") Urban Forestry Division, Munevver Erlem, trees within fifty feet of the District's roadways are within the control of both the National Park Service and DDOT. Ex. A, at 9:14-25. Likewise, National Park Service ("NPS") Supervisory Horticulturalist, Diana Bramble, was under the impression that the tree in question was well within the above-described easement and belonged to DDOT. *See* Defendant's Ex. B, Deposition Transcript of Diana Bramble at 37:16-38:10. The tree, and its overhanging branch, were within the control of both DDOT and NPS and thus both had a duty to make independent inspections of trees in high target areas in order to avoid injuries such as those suffered by Plaintiff. *See* Ex. F, FOIA Emails (further indicating that Urban Forestry and NPS have concurrent jurisdiction over the area in question). If anything, the question of whether the tree base was within the control of DDOT is a material issue of fact requiring jury resolution.

The District also attempts to support its Act of God argument by pointing to the widespread destruction Sandy caused to various trees in the D.C. area as evidence that human neglect could not have caused Plaintiff's injury. Again, the Defendant attempts to mislead the Court by pointing to damage which was reported to have occurred *after* the Plaintiff's injury. The Court must examine the natural circumstances surrounding the Plaintiff's injury at the time of injury, and not by looking at Sandy's post-storm damage. Defendant has failed to provide any evidence tending to show that other trees brought down by Sandy actually fell, or were damaged, during the timeframe, and weather conditions, experienced by Plaintiff. The clear inference is that the dead and decaying tree branch hanging over the Klingle Valley Bridge fell at the time of Plaintiff's injuries, and even then, only as a result of the negligent failure to properly maintain, inspect, and remove such dead and hazardous trees and their constituent limbs.

The Defendant's failure to remove and/or prune the hazardous branches of the dead and decaying tree whose branches struck Plaintiff prior to the date and time of injury reflects a degree of human neglect which precludes the Act of God defense. Had the District's Urban Forestry Division acted in accordance with its protocols, the tree at issue would have been removed at some time prior to October 29, 2012. The Defendant's failure to properly inspect, maintain, and remove, hazardous trees which were substantially likely to cause injury to those using the bridge represents actionable negligence not protected under an Act of God theory.

**c. The harm suffered by Plaintiff as a result of the District's negligence could have been avoided.**

Plaintiff's injuries could have been avoided had the tree, or its branches, been properly removed upon discovery of their hazardous condition.

An Act of God defense is inapplicable to consequences which could have been prevented or avoided by foresight or prudence. *See* 226 A.2d at 162. Where a defendant's negligence has

11

subjected others to the effects of nature, no relief under an Act of God defense may be found. *See* 629 F.Supp.2d at 9.

The Defendant wholly ignores the fact that its negligence exposed the tree and its branches to the elements, eventually causing the branches to fall and strike Plaintiff. Instead, the District heavily relies on Mayor Gray's October 28, 2012 press conference and the state of emergency declared on the 26th, in an attempt to shed itself of its duties and impart full responsibility to any soul unfortunate enough to be injured as a result of the District's negligence from October 26, 2012, to November 10, 2012. Yet again, the District attempts to mislead the Court's application of the Act of God defense by focusing on actions and events outside the scope of Plaintiff's injury. The blanket statements regarding Sandy, including the state of emergency declaration, simply do not meet the threshold of foresight and prudence required by case law to apply the Act of God defense. Rather, these statements are generalized warnings not designed to prevent or avoid the particular consequences of the District's negligence in this matter. Simply put, something more is required.

Had the District examined the tree at issue, determined that it was not dead despite its appearance, and ruled it out as hazardous in a reasonable time prior to the events of this case, and the tree branch still fell and injured Plaintiff, the defense would be available to them as they would have acted with prudence and foresight in an attempt to avoid or prevent the injury. Had the District examined the tree, found an overhanging branch to be dead, and removed it, again in a reasonable time prior to the events of this case, and then the tree fell and injured Plaintiff, again the Act of God defense would be available to them. The District could have taken any number of steps to actually prevent or avoid Plaintiff's injury from occurring, but instead they did nothing.

12

The District's failure to properly inspect, maintain, and remove hazardous trees and their constituent parts necessarily subjected the Klingle Valley Bridge to the effects of nature which in turn caused the dead branch to break off and strike the Plaintiff. The Defendant cannot reasonably say that it took measures to prevent or avoid the tree or its branches from falling and injuring those on the Bridge. As a result of this failure to prevent or avoid, the Act of God defense is not applicable to the District.

The Defendant's Act of God defense does not apply to the case at issue. The meteorological conditions at play during the time of Plaintiff's injury constituted normal storm conditions often experienced in the area. The District attempts to color and prejudice the Court's view of this case by improperly placing its occurrence within the timeframe of Sandy's landfall while ignoring the fact that these events occurred several hours before Sandy actually affected the D.C. area, and while the storm was still hundreds of miles away at sea. Even if the Court considers the weather conditions at the time of injury to be extraordinary, the District's negligent maintenance of the Klingle Valley tree represents an element of human negligence, without which the tree branch would never have fallen. Finally, the Act of God defense is precluded because the consequences of a dead tree branch falling in the presence of a storm were foreseeable and avoidable. Plaintiff's injury was not caused by an Act of God and thus summary judgment should be denied.

III.   **THE DOCTRINE OF SOVEREIGN IMMUNITY IS NOT APPLICABLE TO THE DISTRICT IN THIS MATTER**

The District's tree inspection and removal program is subject to mandatory regulations and policies concerning the routine maintenance, inspection, and removal of trees under its control and thus the doctrine of sovereign immunity does not apply. Even if the District's actions

were to be considered discretionary under the *Berkovitz* Test, they are not of the class intended to be protected by the Federal Tort Claims Act's ("FTCA") discretionary function exception.

The doctrine of sovereign immunity bars suits challenging the "discretionary functions" of a federal entity. *Nealon v. District of Columbia*, 669 A.2d 685, 690 (D.C. 1995). When examining whether the conduct of a governmental entity is discretional or ministerial, the Court looks to the *Berkovitz* Test. *Walen v. United States*, 246 F.Supp.3d 449, 455 (D.D.C. 2017). Under the *Berkovitz* Test, governmental conduct is discretionary if: (1) the actions involve elements of judgment or choice; and, (2) if so, are such actions of the class designed to be protected by the discretionary functions exception to the FTCA. *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Walen*, 246 F.Supp.3d at 455. Conduct is not discretionary if a statute, regulation, or policy prescribes a mandatory course of action for the governmental entity to follow. *See Berkovitz*, 468 U.S. at 536; *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1143 (D.C. Cir. 2015). Discretionary conduct that acts to balance political, social, or economical judgments falls within the class protected by the exception. *Banneker*, 798 F.3d at 1139.

The District's tree inspection and removal plan is purely ministerial as it prescribes procedure for tree removal which the District must abide by. Throughout their motion the District attempts to rely on the fact that there is a notice and inspection component to its tree inspection and removal program in order to qualify its conduct as discretionary. However the very existence of this policy reinforces the notion that Defendant's conduct is ministerial as it prescribes a course of action for employees to follow. *See Walen*, 246 F.Supp.3d at 459 (stating that the United States' tree inspection and maintenance program prescribes a course of action for an employee to follow and thus is not discretionary). Beyond this the evidence suggests that the DDOT's Urban Forestry Division works concurrently with NPS to remove trees within their

concurrent jurisdictions. *See* Ex. A, at 9:14-25; Defendant's Ex. B, at 37:16-38:10. Since NPS's tree removal program was determined by this Court to be a ministerial function of the United States government, and because the NPS program necessarily involves and implicates the Urban Forestry program, the DDOT program must also be ministerial.

Even if the District's conduct could be considered discretionary, it is not within the class designed to be protected by the exception as it relies on professional and scientific judgment. The Supreme Court has drawn a distinct line between the application of objective scientific standards and the exercise of considerable policy judgment. *See Berkovitz*, 486 U.S. at 545; *Walen*, 246 F.Supp.3d at 464-65. Actions based on "technical or scientific standards are not the kinds of judgments meant to be protected from liability by the discretionary function exception because those actions do not involve a weighing of policy considerations." *Marlys Bear Medicine v. U.S. ex rel. Secretary of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001). The inherent nature of the District's tree removal and inspection program demands professional and scientific opinion and judgment. The decision whether to remove a hazardous tree or its limbs, and even the knowledge requisite to inspect said trees, is beyond the capabilities of a lay person which is precisely why the District employs arborists and horticulturists with advanced biology degrees to perform this work. The bevy of scientific expertise required to perform these actions, as well as the prescriptive nature of the conduct, is supported further by the depositional representations made by NPS facility manager/chief of maintenance, Donald Kirk. Kirk's testimony maintains that often times NPS and Urban Forestry must work together and follow protocol when interacting with hazardous trees within the control of both entities. Defendant's Ex. C, Deposition Transcript of Donald Kirk at 28:21-32:19; *see also* Ex. F.  Even if the Court were to agree that the prescriptions set forth in the District's tree inspection and removal plan were

discretionary in nature, the scientific underpinnings of said conduct falls outside the purview of conduct intended to be protected by the exception.

The District attempts to rely on the doctrine of sovereign immunity to bar this suit but utterly fails to recognize that its conduct is ministerial rather than discretionary. This very Court held that nearly identical conduct by the United States was similarly ministerial based on the prescriptive nature of the relevant regulations and policies, and that even if the conduct could be considered discretionary, it was excluded from the exception as the conduct concerns professional and scientific judgments. *See generally Walen*, 246 F.Supp.3d. The District's attempt at distinguishing its notice and removal policy from those policies implemented by NPS is unpersuasive and falls into the same pitfalls experienced previously by the United States. As such, summary judgment is inappropriate on these grounds.

## IV. PLAINTIFF'S EXPERT SETS FORTH A STANDARD OF CARE APPLICABLE TO BOTH NPS AND THE DISTRICT

Plaintiff's expert, Lew Bloch, has sufficiently set forth a standard of care applicable to the District with regard to tree inspection and maintenance. The District has deviated from this standard of care and its failure to properly inspect, maintain, and remove hazardous trees and limbs constitutes actionable negligence.

### a. The standard of care set forth by Plaintiff's Expert is applicable to both the District and NPS.

Plaintiff concedes that this matter requires expert testimony demonstrating the applicable standard of care as the alleged conduct falls outside the realm of common knowledge.[2]

---

[2] It is worth noting that the District begins its assertions that Plaintiff's Expert report is fatally deficient by stating that Plaintiff must prove that the District had notice of a defect in the tree, and a duty to inspect it. Under *Husovsky* however, the nature of the roadway around Klingle Valley Bridge, and its surrounding trees, requires the District to make periodic and independent inspections of trees in areas such as this, due to the high likelihood that defective trees would compromise the safety of those using public ways. *See Husovsky*, 590 F.2d at 950-52. Consequently the notice requirement is supplanted by the District's tacit acknowledgement that such roadways are more prone to the effects of nature and necessitate a heightened awareness of their condition. *Id*. at 950.

Expert testimony must clearly articulate and reference a standard of care by which the defendant's actions can be measured. *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997). The expert must relate the standard of care to the practices generally followed by other comparable governmental entities or to some national standard recognized by such units. *See Katkish v. District of Columbia*, 763 A.2d 703, 705 (D.C. 2000); *Clark*, 708 A.2d at 635.

Plaintiff's Expert sets forth a standard of care for NPS that is equally applicable to the District. While it is true that Mr. Bloch's expert report focuses on NPS and its relevant protocols, regulations, and standards, this standard of care is established for a *national* governmental agency which regularly cooperates, interacts, and often times has concurrent jurisdiction, with the District's Urban Forestry Division. *See* Defendant's Ex. C at 28:21-32:19. Bloch's standard of care is applicable to the District inasmuch as it is both a nationally recognized standard, and is generally followed by the Urban Forestry Division in its capacity as a comparable governmental facility. *See Clark*, 708 A.2d at 635. Both NPS and the Urban Forestry Division perform similar tasks that differ primarily in jurisdiction, but as repeatedly stated, in many cases involving the District of Columbia, that jurisdiction is concurrent. *See* Ex. F. The tree in question is undoubtedly within the jurisdiction of NPS, however the corroborative Declaration of Eric Kimbuende firmly places the tree within the jurisdiction of the District. *See* Ex. H, Declaration of Eric Kimbuende. Moreover, the District still has a duty to inspect the tree in question, as well as the other trees lining the Klingle Valley Bridge, because of the heightened possibility that these trees could cause substantial damage to the roadway they overlook. *See* 590 F.2d at 950. Consequently, both agencies are held to substantially similar, if not the same, standards of care with respect to tree inspection and maintenance.

Plaintiff's expert has set forth a national standard of care through his analysis of the National Park Service's applicable tree inspection, maintenance, and removal protocols and standards. Even if the Court is not fully convinced that this standard of care is not nationally applicable, the work performed by both NPS and the District's Urban Forestry Division is so substantially similar, and often concurrent, that the NPS standard applies with equal force. Bloch has articulated a nationally recognized, or substantially similar, standard of care which the District clearly deviated from in this matter, and as such summary judgment is improper.

### b. The expert opinions contained in Bloch's report, and the reliability thereof, are appropriately assessed by a jury.

In assessing a motion for summary judgment, the court is to review the entirety of the record in the light most favorable to the plaintiff and determine whether a dispute as to material fact exists. The court may not weigh evidence, make findings of fact, or otherwise substitute its opinion as to the likely outcome of further litigation. *See* 477 U.S. at 249 (1986); *Linen v. Lanford*, 945 A.2d 1173, 1177 (D.C. 2008); ; *District of Columbia v. W.T. Galliher & Brother*, 656 A.2d 296, 302 (D.C. 1995); . The court must review the entirety of the record and cannot base the existence of genuine issues on its own predilections. *See Samm v. Martin*, 940 A.2d 138, 140-42 (D.C. 2007); *Beckman v. Farmer*, 579 A.2d 618, 626 (D.C. 1990).

The District asserts that Lew Bloch's expert report contains opinions lacking a factual basis, but this is simply incorrect. The District appears baffled by the fact that Bloch based his expert opinions on his understanding that photos provided by MPD[3] contained the tree, tree limbs, and debris that struck Plaintiff. Furthermore, a cursory inspection of the MPD photos reveals the Plaintiff's red umbrella which she was carrying at the moment she was struck and injured. *See* Ex. G, Plaintiff's Affidavit. Corroborative evidence preferred by Eric Kimbuende also firmly

---

[3] MPD incident reports clearly indicate that photos of the accident scene were taken. *See* Ex. B, at 9.

established that the decaying tree depicted in the MPD photos is the same tree whose limb failed and struck Plaintiff. *See* Ex. H. Given the overwhelming evidence that the MPD photos depict the exact debris that struck the Plaintiff, Bloch's opinions are properly founded. The District then asserts that because the opinions of Diana Bramble and Lew Bloch do not match perfectly, that such opinions are baseless and warrant expert exclusion. Experts may have different opinions regarding similar circumstances, yet the evaluation of such opinions are better suited for trial and jury assessment rather than summary judgment. This Court is not tasked with weighing the accuracy and veracity of the evidence at this stage of litigation, rather it must determine the existence of genuine disputes of material fact. In this case. Disputes between expert opinions constitute genuine disputes of material fact as to the health of the tree limb and whether the limb depicted was the one that struck Plaintiff, such questions are not properly resolved through summary judgment.

## V. PLAINTIFF WAS NOT CONTRIBUTORILY NEGLIGENT AND DID NOT ASSUME THE RISK BY VENTURING OUTSIDE BEFORE THE STORM

The District of Columbia has a duty "to maintain its streets in a condition fit for convenient use and safe against accident to travelers using them." *Husovsky*, 590 F.2d at 950. Questions of contributory negligence and assumption of the risk are historically questions for the jury. *Phillips v. D.C. Transit System, Inc.*, 198 A.2d 740, 741 (D.C. 1964). When evaluating whether the issues of contributory negligence or assumption of the risk are proper for summary judgment, the evidence must be taken in the light most favorable to the plaintiff. *See Mahnke v. Washington Metropolitan Area Transit Authority*, 821 F.Supp.2d 125, 133 (D.D.C. 2011) ("Contributory negligence is virtually always a question of fact for the jury.") (quoting *Andrews v. Wilkins*) (citation omitted); *Poyner v. Loftus*, 694 A.2d at 70 (D.C. 1997).

### a. The Plaintiff was not contributorily negligent.

Contributory negligence is found where a plaintiff, in encountering the risk created by a defendant, acted unreasonably or departed from an objective standard of care. *See Dennis v. Jones*, 928 A.2d 672, 677 (D.C. 2007). A plaintiff's acts or omissions must **unreasonably** increase exposure to the danger created by the defendants, of which the plaintiff knows, or has reason to know. *Scroggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980). The question of contributory negligence is necessarily centered around the danger created by the defendants, and the plaintiff's behavior in actually encountering said danger. *See Sinai v. Polinger Co.*, 498 A.2d 520, 525 (D.C. 1985). If the plaintiff did not deviate from the standard of care that was to be expected of a reasonable person in plaintiff's position, no contributory negligence may be found. *See id.*

The District continues to place undue focus on the landfall of Sandy rather than the conditions actually present at the time of Plaintiff's injury. In doing this, the District also misconstrues the doctrine of contributory negligence by asserting that Plaintiff's exposure to the weather conditions, and her actions leading thereto, should be assessed by this Court, rather than examining the reasonableness of her actions when faced with the danger created by the District's negligence. This distinction becomes clear when the doctrine is examined in a more traditional context: a car accident. In motor vehicle collisions the contributory negligence defense hinges on whether in spite of the defendant's failure to follow the rules of the road (the danger created by the defendant) the plaintiff also acted to further cause, or add to, the injuries suffered in the resultant collision (an unreasonable deviation from the plaintiff's objective duty of care). The relevant inquiry must be focused on the plaintiff's conduct when exposed to the fruits of the defendant's negligence and cannot be traced back to her conduct before the exposure.

Appropriately, the District must focus on the Plaintiff's objective behavior when faced with the danger it created in order to assert contributory negligence.

When the situation is properly evaluated through this lens, it becomes clear that Plaintiff did not deviate from an objective standard of care. Plaintiff, upon encountering the fruits of the District's negligence, could do nothing to prevent or avoid her injuries. There was no evidence of that Plaintiff could have jumped out of the way to avoid being hit by the negligently maintained branches, nor is there any indication that Plaintiff unreasonably exposed herself to the danger created by the District aside from the fact that she was outside. Plaintiff adhered to the appropriate standard of care for a reasonable person in her position at the time of injury.

The District's argument would create a dangerous precedent unduly expanding the scope of contributory negligence and destroying our notion of proximate cause. One of the tenets of the contributory negligence doctrine is the idea that a plaintiff's departure from an objective standard of care interrupts the proximate cause element initially stemming from the defendant's breach of duty. *See United States v. Monzel*, 641 F.3e 528, 535 (D.C. Cir. 2011) *see also O'Connor v. District of Columbia*, 921 F. Supp. 2d 5, 6 (D.D.C. 1996) ("[E]ven if there is a basis for plaintiff's allegation that the District was negligent…plaintiff's actions constituted contributory negligence *which proximately caused* her injury.") (emphasis added). This comports with the legal profession's fundamental understanding of tort law by recognizing that a breach of duty that is too far removed from the injury is not a proximate cause of said injury and is thus not actionable. It stands to reason that the same logic would necessarily apply when assessing whether a plaintiff was contributorily negligent. If the plaintiff's deviation from an objective standard of care is too far removed from the harm, then it cannot be said to proximately cause the

harm, and thus a plaintiff cannot be held contributorily negligent as the deviation did not interrupt the defendant's breach of duty which proximately caused the plaintiff's injuries.

Accordingly, even if the Court did agree with the District that Plaintiff unreasonably left her home during unusual, but not extraordinary, weather conditions, the merits of which will be discussed more fully below, it cannot find that Plaintiff was contributorily negligent in this case because the objective deviation (Plaintiff leaving her home) is too far removed from the fruits of Defendant's breach (failing to inspect and maintain a dead and dying tree limb for several years) and thus cannot be said to have interrupted proximate cause because the two events are so substantially unrelated. If the District is permitted to succeed with this argument the precedent it creates quickly falls apart upon application. As previously stated, when taken *ad absurdum* Defendant's position would have any tortious conduct which occurred between October 26, 2012, and November 10, 2012 barred by contributory negligence or assumption of the risk since in the District's mind, going outside during a state of emergency, regardless of the actual conditions, constitutes an unreasonable deviation from the standard of care.

Going outside during the weather conditions encountered by the Plaintiff did not constitute contributory negligence. As stated above, the District has wholly mischaracterized the weather conditions present at the time of Plaintiff's injury. Sandy was hours away from actually reaching the D.C. area and thus the District's constant references to Plaintiff "walk[ing] right into the storm as it neared its peak" and knowing that there was "severe danger" at the time, are inappropriate and inconsistent with the low wind speeds actually measured and observed at the time of injury. *See* Ex. E. Armed with the knowledge that Sandy would not arrive for several more hours, Plaintiff chose to go outside and complete some last minute errands in preparation for the hurricane to come. Given that the weather was no worse than what one would expect

from a normal, if not slightly stronger, storm in the area, and the fact that multiple people were also outside in the same weather conditions, Plaintiff's actions cannot be considered unreasonable. *See* Ex. H.

The District urges to consider the matter of *Phillips v. Fujitec Am., Inc.*, as instructive in this case but fails to properly analyze its holding. 3 A.3d 324, 329 (D.C. 2010). In *Phillips* the court held that the danger of crawling out of a malfunctioning elevator and falling to one's death was an obvious hazard which the plaintiff contributed to. *Id*. Indeed, this danger was obvious. The plaintiff knew that a dangerous gap existed outside the elevator and knew from the height of the elevator that a fall would be fatal. *Id*. Yet despite knowing of the specific hazard and its consequences, the plaintiff ignored the warning, attempted to crawl out of the elevator, fell due to the gap, and died. *Id*.

*Phillips* fails to direct the case at bar for two significant reasons. Firstly, the plaintiff in *Phillips* had actual knowledge of the hazardous condition (the gap) and had actual knowledge that a fall from that height would likely cause death. Whereas, the Plaintiff in this case only knew that a hurricane was set to affect the D.C. area at approximately 10:00 p.m. The Plaintiff never once imagined that while walking outside, hours before the storm hit, that a negligently maintained tree branch would strike her and cause such severe injuries. Secondly, the plaintiff in *Phillips* was specifically warned about the danger presented by the gap. In this case, the only warnings asserted by the Defendant are those that came from news sources or Mayor Gray, and which only warned that a hurricane would be affecting the D.C. area late at night on October 29, 2012. There were no specific warnings urging citizens not to walk the Klingle Valley Bridge hours before the storm hit, or stating that people should be on the lookout for flying, dead tree limbs. The warnings received by Plaintiff, or any which the Plaintiff should have been aware of,

only related to the storm which had not yet arrived. As such, it cannot be said that Plaintiff

disregarded any warnings and unreasonably subjected herself to the fruits of Defendant's

negligence.

The District's contributory negligence argument fails both because it incorrectly focuses

on the totality of Plaintiff's reasonableness, rather than the reasonableness of her actions when

faced with the danger created by the District, and because Plaintiff did not act unreasonably by

choosing to go outside hours before the hurricane had manifested in the D.C. area. The District's

proposed argument impermissibly expands the scope of the contributory negligence doctrine by

wholly disregarding proximate cause and failing to show that Plaintiff's conduct unreasonably

interrupted or furthered the District's breach of duty and subsequent causation of her injuries.

Even assuming that such an expansion of doctrine is permissible, it cannot be said that Plaintiff

unreasonably increased her exposure to the danger created by the District when she decided to go

outside hours before Sandy made landfall. The issue of contributory negligence is an issue of

material fact which precludes summary judgment.

**b.  The Plaintiff did not assume the risk.**

Assumption of the risk bars recovery under a negligence claim if the Plaintiff voluntarily

accepted a subjectively known risk created by a defendant. *See Morrison v. MacNamara*, 407

A.2d 555, 566 (D.C. 1979). Assumption of the risk requires a knowledge of the danger created

by a defendant and a voluntary exposure to that danger. *Dougherty v. Chas. H. Tompkins Co.*,

240 F.2d 34, 35-36 (D.C. Cir. 1957).

The doctrines of contributory negligence and assumption of the risk are fundamentally

intertwined and differ only in their respective objective and subjective knowledge of danger

requirements. *See Scroggins*, 419 A.2d at 1004. For this reason the above arguments regarding

contributory negligence are equally applicable to the District's assertion of assumption of the risk. The District's argument continues to incorrectly focus its inquiry on the totality of Plaintiff's actions, rather than on her actions and knowledge in the face of the danger created by the District. Accordingly, Plaintiff could not possibly have known that the tree near the Klingle Valley Bridge was dead and negligently maintained by the Defendant and could possibly break under the prevailing wind conditions at the time, thereby leading to her injuries.

The District fails to acknowledge the exact nature of the danger encountered by Plaintiff. Throughout the entirety of the Defendant's Motion, there is an overwhelming emphasis on the danger posed by Sandy. However, the danger encountered by Plaintiff was not caused by Hurricane Sandy, notwithstanding the fact that Sandy had not even arrived at the time of injury, in fact, the danger was caused by the negligent maintenance of the Klingle Valley trees by the District. Regardless of what Plaintiff actually knew about Sandy, and its potential for destruction, the reality is that Sandy did not cause Plaintiff's injuries, the District's negligent inspection and maintenance of the Klingle Valley trees did, and thus only a subjective knowledge of said danger would warrant an assumption of the risk analysis. As there is no possible way that Plaintiff could have known of the defective condition of the tree that struck her, she could not have assumed the risk.

## CONCLUSION

For all of the above reasons, the Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted,

**PRICE BENOWITZ, LLP**
By:      */s/ John J. Yannone*
John J. Yannone, Esq. (#04396)
John@PriceBenowitzlaw.com

Price Benowitz, LLP
409 7th Street, NW, Suite #200
Washington, D.C. 20004
Phone:  (202) 417-6015
Fax:  (301) 244-6659
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this <u>21st</u> day of December, 2018, a copy of the foregoing

Plaintiff's Memorandum Opposing Defendant District of Columbia's Motion for Summary

Judgment was served by electronic mail and/or U.S. mail on all counsel of record.


*/s/ John J. Yannone*
John J. Yannone, Esq.