UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MARY LOU WALEN** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Case No.: 1:15-CV-01718-BAH** |
| vs. | : | |
| | : | |
| **THE UNITED STATES OF** | : | |
| **AMERICA, *et, al.*** | : | |
| | : | |
| **Defendants.** | : | |

PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT UNITED STATES OF
AMERICA'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff Mary Lou Walen, by and through undersigned counsel, John

J. Yannone, Esq. and Price Benowitz LLP, hereby files this Opposition to Defendant United States

of America's Motion for Summary Judgment and states the following in support thereof:

INTRODUCTION

On October 29, 2012 at approximately 3:10 p.m., Plaintiff was walking across the

Connecticut Avenue Bridge spanning the Klingle Valley when the branch of a nearby dead and

decaying tree fell and struck her, causing significant damage to her right leg and upper

extremities. At the time of Plaintiff's injury, Hurricane Sandy ("Sandy") was approximately five

hours, and 216 miles, away from making landfall in New Jersey, and hazardous conditions from

its after effects had not yet begun to affect the D.C. Metropolitan Area.

In reality, when the Plaintiff chose to walk across the Klingle Valley Bridge, Sandy was

hours away and the area was subjected to those conditions normally encountered during storms

at that time of the year. It was during this period of normal, if not slightly unusual but certainly

not extraordinary, weather conditions that the dead branch of a negligently maintained tree in the Klingle Valley broke and violently struck the Plaintiff.

The United States owed a duty to Plaintiff to properly maintain and inspect trees overlooking the District's pedestrian walkways and roads throughout the city. The Defendant breached this duty when it failed to maintain, inspect, or notice the long-dead tree overlooking the Klingle Valley Bridge. As a result of the Defendant's breach of duty, the tree's equally dead branches failed when exposed to inclement weather and ultimately struck Plaintiff, proximately causing severe injuries to her right leg and upper extremities.

The United States would like to blame Hurricane Sandy for the injuries suffered by Plaintiff rather than its failure to properly maintain the trees within the purview of the National Parks Service ("NPS"). However, the storm is simply not a suitable scapegoat for the United States to rely on as it was hundreds of miles away at the time of the incident and weather conditions had not yet begun to exhibit the destruction we have all come to associate with Hurricane Sandy. The United States hopes to convince this Court that Plaintiff contributed to her injuries by venturing outside hours before Sandy even began to affect the area. In doing this Defendant relies on the state of emergency declared by Mayor Gray on October 26, 2012, three days before the storm hit, which lasted until November 10, 2012, almost ten days after Sandy had come and gone, in an attempt to persuade the Court that Plaintiff acted unreasonably. Applying the Defendant's logic regarding declarations of states of emergency, any tortious conduct having occurred between October 26, 2012, and November 10, 2012, would have been barred under the doctrines of contributory negligence. Moreover the legal underpinnings of the contributory negligence doctrine further preclude its application to the case at bar. Defendant then argues that Plaintiff's expert report fails to apply proper methodology and is thus unable to

carry its burden at trial. This too is unavailing as Plaintiff's expert has sufficiently based his conclusions on rational explanations developed through his expertise.

The United States fails to eliminate the overwhelming issues of material fact in dispute strewn throughout this case concerning the actual inspection and maintenance of the tree in question, issues relating to the concurrent jurisdiction of the tree by the Defendants, and questions of differing expert opinions. As such, the Defendant's Motion for Summary Judgment should be denied and the case heard on its merits.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a)-(b), a moving party is only entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and responses to production of documents, together with any affidavits show that there is no genuine issue as to material fact. *Cater v. Greenspan*, 304 F.Supp.2d 13, 20 (D.D.C. 2004). A genuine issue of material fact exists when a fact would significantly affect the outcome of the case in such a way that a reasonable jury could return a verdict for the non-moving party based on the available evidence. *See Kibunja v. Alturas, LLC*, 856.A.2d 1120, 1127-28 (D.C. 2004).

In considering a motion for summary judgment, the Court is required to view the facts, and draw all reasonable inferences, in a light most favorable to the non-moving party. *See Matshuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996); *Celotex Corp. v. Vatrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Ltd.*, 477 U.S. 242 (1986). Furthermore, summary judgment should not be granted if there is even the slightest doubt as to material fact. *See Westinghouse Elec. Corp. v. Seal & Co.*, 842 F.Supp. 586, 590 (D.D.C. 1994). The Plaintiff is entitled to have the credibility of all his evidence presumed and viewed most favorable to him when assessing any genuine dispute as to material fact.

## ARGUMENT

I.   **PLAINTIFF SUFFICIENTLY SETS FORTH A PRIMA FACIE CASE FOR NEGLIGENCE**

In order to establish a *prima facie* case of negligence a plaintiff must show: (1) that the defendant owed a duty to plaintiff; (2) that the defendant breached their duty; and, (3) that the defendant's breach of duty proximately caused plaintiff's injuries. *Smith v. United States*, 157 F.Supp.3d 32, 40 (D.D.C. 2016). Plaintiff effectively maintains its action for negligence in this case.

The United States owes a duty to maintain federal streets in a condition fit for convenient use and safe against accident to travelers using them. *Husovsky v. United States*, 590 F.2d 944, 952 (D.D.C. 1978). In this case the United States owed a duty to maintain, inspect, and make safe, the trees lining the Klingle Valley Bridge through NPS. The Defendant's standard of care is appropriately set forth by Plaintiff's expert, Lew Bloch through his evaluation of NPS regulatory programs. *See* Def. Ex. E, Expert Report of Lew Bloch. Furthermore, Plaintiff, as a pedestrian, is entirely within the class of people intended to be protected by the United States in the exercise of this duty.

The United States breached its duty by failing to properly maintain, inspect, and make safe, the dead and/or dying tree overlooking the Klingle Valley Bridge. The tree whose branch ultimately struck Plaintiff had been dead and/or dying for a significant period of time prior to the date of the occurrence. *See id*. The specific tree whose limb failed has also been identified by Eric Kimbuende, a witness to the occurrence. *See* Ex. H. This breach of duty is further supported by Plaintiff's weather expert, Thomas Downs', conclusion that the weather conditions in effect at the time of the occurrence would not have been strong enough to cause the branch to fail had it

been a live and healthy limb. *See* Ex. A, Thomas Downs Expert Weather Report. This breach of duty is what ultimately led to Plaintiff's injuries.

The Defendant's breach of duty proximately caused Plaintiff's injuries. Had NPS fulfilled its duty to maintain, inspect, and make safe, the trees overlooking the Klingle Valley Bridge, the tree in question would have been discovered at an earlier time and any potential hazards caused by its dead branches could have been abated. However, in light of the Defendant's breach of duty the dead limbs of the tree were caused to fail when exposed to inclement weather. If the tree's limbs were healthy the low wind speeds experienced at the time of the occurrence would not have caused the branches to fail and ultimately injure the Plaintiff. *See id*. Without the Defendant's material breach of duty, Plaintiff would not have been injured.

Plaintiff has established a *prima facie* case for negligence against the United States, and as such summary judgment is inappropriate unless the Defendant can show that no genuine disputes as to material fact exist in this case, or that a defense barring Plaintiff's claims applies. For the reasons set forth below, the defenses raised by Defendant are unavailing and inapplicable. Furthermore, genuine disputes regarding the actual inspection and maintenance of the tree in question, questions relating to the concurrent jurisdiction of the tree by the Defendants, and issues of differing expert opinions still exist requiring jury resolution on the merits.

## II.     PLAINTIFF WAS NOT CONTRIBUTORILY NEGLIGENT BY VENTURING OUTSIDE BEFORE THE STORM

### a.  Defendant's Characterization of the Storm and Relevant Weather Conditions is Hyperbolic, Prejudicial, and Unsubstantiated.

Throughout the United States' Motion, the Defendant relies on prior predictions regarding the destructive capacity of Sandy as well as the average rainfall and wind speed for

October 29, 2012, rather than relying on the actual conditions experienced at the time Plaintiff

was injured. In doing so, the United States attempts to deflect attention away from the real issue

– its failure to properly and timely inspect and maintain the tree, which it is concurrently

responsible for. As a result, a dead tree branch that should have been removed well before

October 29, 2012, violently struck Mrs. Walen, causing significant and serious injuries. No one

denies the fact that Hurricane Sandy was approaching landfall in the New Jersey area between

October 26, 2012, and October 31, 2012, however it is essential that the actual weather

conditions at the time of the injury be those conditions exclusively relied on when assessing the

merits of Defendant's arguments in this case.

Again and again Defendant refers to Monday, October 29, 2012, in its totality as the

worst part of the storm but this is a highly misrepresented and extremely prejudicial statement

intended to lead the Court astray. The National Hurricane Center noted Sandy's position at 2:00

p.m. and 8:00 p.m. on October 29, 2012. *See* Ex. B, National Hurricane Center Sandy Map.[1] At

2:00 p.m., approximately an hour before Plaintiff was injured, Sandy was approximately 216

miles away from Washington, D.C. *See id*; *see also* Ex. C, National Hurricane Center

Latitude/Longitude Calculator (showing the measured distance between the location of Sandy as

shown in Ex. C, and Washington, D.C.). Similarly the rain fall and wind speed at 3:00 p.m. that

day were measured at .2 inches and 20mph respectively. *See* Ex. A. The peak gusts and wind

speeds cited by Defendant, along with the fact that October 29, 2012 had set a precipitation

record of 3.85 inches, were all measured hours after Plaintiff was injured and are indicative of

---

[1] Defendant incorrectly asserts that Sandy made landfall in New Jersey at approximately 5:00 p.m. on October 29, 2012. The Report cited by Defendant actually states that landfall was made at approximately 2330 UTC, which is actually 6:30 p.m. EST. *See* Def. Ex. A at 4. Despite the fact that Sandy made landfall at approximately 6:30 p.m. that night, the effects of the storm were not felt in the D.C. area until approximately 10:00 p.m. *See* Ex. A, at Weather Data.

the cumulative weather effects of that day rather than the actual conditions at the time of injury. At the time Plaintiff was struck by the negligently maintained tree branch less than half an inch of rain had fallen and wind speeds were only measured at approximately 20mph (with brief gusts up to 40mph), far too weak to cause the tree's limb to fail had it been healthy. These conditions constituted inclement weather normally experienced during storms in the D.C. area and were nothing compared to the record-setting precipitation and high wind speeds experienced approximately *6 hours later*.

Throughout their Motion, the United States repeatedly and purposefully hyperbolizes and mischaracterizes the conditions surrounding Plaintiff's injury by placing undue emphasis on the totality of the storm across multiple hours and days rather than actually focusing on the conditions at the time of injury. Plaintiff does not suggest that Hurricane Sandy was not an exceptional and extraordinary storm that greatly affected many individuals along the eastern sea board. However, the Defendant cannot be allowed to misrepresent the fact that the storm had not actually begun to manifest in the D.C. area at the time of Plaintiff's injury, nor to use the storm as a smokescreen relieving them of their responsibility to properly maintain and inspect the trees within their control.[2]

**b. The Plaintiff was not Contributorily Negligent.**

Questions of contributory negligence and assumption of the risk are historically questions for the jury. *Phillips v. D.C. Transit System, Inc.*, 198 A.2d 740, 741 (D.C. 1964). When evaluating whether the issues of contributory negligence or assumption of the risk are proper for

---

[2] Plaintiff's expert weather report repeatedly states that a branch similar in size to the one that struck the Plaintiff would not have failed when exposed to the weather conditions experienced at the time of the occurrence. *See generally* Ex. A. Downs opines that healthy branches of this size do not fail unless they are subjected to sustained wind speeds of between 61 and 88 MPH. *See id*. at 3. The wind gusts measured at the time of the occurrence do not come close to reaching such speeds. *See id*.

summary judgment, the evidence must be taken in the light most favorable to the plaintiff. *See Poyner v. Loftus*, 694 A.2d at 70 (D.C. 1997).

Contributory negligence is found where a plaintiff, in encountering the risk created by a defendant, acted unreasonably or departed from an objective standard of care. *See Dennis v. Jones*, 928 A.2d 672, 677 (D.C. 2007). A plaintiff's acts or omissions must **unreasonably** increase exposure to the danger created by the defendants, of which the plaintiff knows, or has reason to know. *Scroggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980). The question of contributory negligence is necessarily centered around the danger created by the defendants, and the plaintiff's behavior in actually encountering said danger. *See Sinai v. Polinger Co.*, 498 A.2d 520, 525 (D.C. 1985). If the plaintiff did not deviate from the standard of care that was to be expected of a reasonable person in plaintiff's position, no contributory negligence may be found. *See id*.

The Defendant places undue focus on the landfall of Sandy rather than the conditions actually present at the time of Plaintiff's injury. In doing this, the United States also misconstrues the doctrine of contributory negligence by asserting that Plaintiff's exposure to the weather conditions, and her actions leading thereto, should be assessed by this Court, rather than examining the reasonableness of her actions when faced with the danger created by the Defendant's negligence. This distinction becomes clear when the doctrine is examined in a more traditional way: a car accident. In motor vehicle collisions the contributory negligence defense hinges on whether in spite of the defendant's failure to follow the rules of the road (the danger created by the defendant) the plaintiff also acted to further cause, or add to, the injuries suffered in the resultant collision (an unreasonable deviation from the plaintiff's objective duty of care). The relevant inquiry must be focused on the plaintiff's conduct when exposed to the fruits of the

defendant's negligence and cannot be traced back to her conduct before the exposure. Appropriately, the United States must focus on the Plaintiff's objective behavior when faced with the danger it created in order to assert contributory negligence.

When the situation is properly evaluated through this lens, it becomes clear that Plaintiff did not deviate from an objective standard of care. Plaintiff, upon encountering the fruits of the Defendant's negligence, could do nothing to prevent or avoid her injuries. There was no evidence that Plaintiff could have jumped out of the way to avoid being hit by the negligently maintained branches, nor is there any indication that Plaintiff unreasonably exposed herself to the danger created by the United Staes aside from the fact that she was outside. Plaintiff adhered to the appropriate standard of care for a reasonable person in her position at the time of injury.

The Defendant's argument would create a dangerous precedent unduly expanding the scope of contributory negligence and destroying our notion of proximate cause. One of the tenets of the contributory negligence doctrine is the notion that a plaintiff's departure from an objective standard of care interrupts the proximate cause element initially stemming from the defendant's breach of duty. *See United States v. Monzel*, 641 F.3e 528, 535 (D.C. Cir. 2011); *see also O'Connor v. District of Columbia*, 921 F. Supp. 2d 5, 6 (D.D.C. 1996) ("[E]ven if there is a basis for plaintiff's allegation that the District was negligent…plaintiff's actions constituted contributory negligence *which proximately caused* her injury.") (emphasis added). This comports with the legal profession's fundamental understanding of tort law by recognizing that a breach of duty that is too far removed from the injury is not a proximate cause of said injury and is thus not actionable. It stands to reason that the same logic would necessarily apply when assessing whether a plaintiff was contributorily negligent. If the plaintiff's deviation from an objective standard of care is too far removed from the harm, then it cannot be said to proximately cause the

harm, and thus a plaintiff cannot be held contributorily negligent as the deviation did not interrupt the defendant's breach of duty which proximately caused the plaintiff's injuries.

Accordingly, even if the Court did agree with the United States that Plaintiff unreasonably left her home during unusual, but not extraordinary, weather conditions, the merits of which will be discussed more fully below, it cannot find that Plaintiff was contributorily negligent in this case because the objective deviation (Plaintiff leaving her home) is too far removed from the fruits of Defendant's breach (failing to inspect and maintain a dead and dying tree limb for several years) and thus cannot be said to have interrupted proximate cause because the two events are so substantially unrelated. If the United States is permitted to succeed with this argument the precedent it creates quickly falls apart upon application. As previously stated, and when applied *ad absurdum*, Defendant's position would have any tortious conduct which occurred between October 26, 2012, and November 10, 2012 barred by contributory negligence or assumption of the risk since in the Defendant's mind, going outside during a state of emergency, regardless of the actual conditions, constitutes an unreasonable deviation from the standard of care.

Going outside during the weather conditions encountered by the Plaintiff did not constitute contributory negligence. As stated above, the United States has wholly mischaracterized the weather conditions present at the time of Plaintiff's injury. Sandy was hours away from actually reaching the D.C. area and thus the Defendant's constant references to Plaintiff walking into the storm as it neared its peak and knowing that falling trees were a principal risk at the time are inappropriate and inconsistent with the low wind speeds actually measured and observed at the time of injury. *See* Ex. A.  Armed with the knowledge that Sandy would not arrive for several more hours, Plaintiff chose to go outside and complete some last

minute errands in preparation for the hurricane to come. Given that the weather was no worse than what one would expect from a normal, if not slightly stronger, storm in the area, and the fact that multiple people were also outside in the same weather conditions, Plaintiff's actions cannot be considered unreasonable. *See* Ex. D, Eric Kimbuende Affidavit.

In this case, the only warnings asserted by the Defendant are those that came from news sources or Mayor Gray, and which only warned that a hurricane would be affecting the D.C. area late at night on October 29, 2012. There were no specific warnings urging citizens not to walk the Klingle Valley Bridge hours before the storm hit, or stating that people should be on the lookout for flying tree limbs. The warnings received by Plaintiff, or any which the Plaintiff should have been aware of, only related to the storm which had not yet arrived and should be treated as blanket statements at best. As such, it cannot be said that Plaintiff disregarded any warnings and unreasonably subjected herself to the fruits of Defendant's negligence.

The Defendant's contributory negligence argument fails both because it incorrectly focuses on the totality of Plaintiff's reasonableness, rather than the reasonableness of her actions when faced with the danger created by the United States, and because Plaintiff did not act unreasonably by choosing to go outside hours before the hurricane had manifested in the D.C. area. The Defendant's proposed argument impermissibly expands the scope of the contributory negligence doctrine by wholly disregarding proximate cause and failing to show that Plaintiff's conduct unreasonably interrupted or furthered the Defendant's breach of duty and subsequent causation of her injuries. Even assuming that such an expansion of doctrine is permissible, it cannot be said that Plaintiff unreasonably increased her exposure to the danger created by the United States when she decided to go outside hours before Sandy made landfall.

Notwithstanding Plaintiff's argument, the issue of contributory negligence is an issue of material

fact which precludes summary judgment.

III.    **PLAINTIFF'S EXPERT SUFFICIENTLY CONFORMS TO THE REQUIREMENTS OF RULE 702**

       a. **The Methodology Relied upon by Plaintiff's Expert is Sufficient to Support his Conclusions.**

Plaintiff concedes that this matter requires expert testimony demonstrating the applicable

standard of care as the alleged conduct falls outside the realm of common knowledge.

Under *Daubert* and Federal Rule of Evidence 702, expert testimony must establish that:

(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact at issue; (2) the testimony is based on sufficient

facts and data; (3) the testimony is the product of reliable principles and methods; and, (4) the

expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702;

*Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *United States v. Hite*, 769

F.3d 1154, 1168 (D.C. Cir. 2014). In evaluating an expert's methodology, the pertinent question

is the reasonableness of the expert's approach to analyzing the relevant facts and data in order to

draw a conclusion regarding the particular matter to which the expert testimony is directly

relevant. *See Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 153-54 (1999). Accordingly,

Plaintiff's expert sufficiently conforms to Rule 702.

Plaintiff's expert, Lew Bloch, possesses specialized knowledge that would help a jury to

understand the evidence or determine a fact at issue in this case. Lew Bloch is an ASCA

Registered Consulting Arborist who possesses arboreal knowledge necessary to determine

whether the tree limbs that struck Plaintiff were dead and/or decaying when they struck Plaintiff.

*See* Def. Ex. E. The question of whether the tree limbs, and by extension the tree that they came

from, were dead and/or decaying speaks directly to the Defendant's failure to timely remedy a hazardous condition.

Bloch's testimony is based on reliable facts and data. Bloch bases his expert opinions on various photos of the limb debris which ultimately struck Plaintiff and of the trees in the surrounding area. *See id*. These photos were taken by MPD investigators who arrived on the scene[3] and depict not only the tree branches that injured Plaintiff, but also the red umbrella dropped by Plaintiff when she was hit. *See* Ex. E, Plaintiff's Affidavit. Corroborative evidence preferred by Eric Kimbuende also firmly established that the decaying tree depicted in the MPD photos is the same tree whose limb failed and struck Plaintiff. *See* Ex. D. The photos showing the scene of the occurrence directly after it happened constitute sufficiently reliable facts and data upon which Bloch was able to base his opinions.

Bloch's testimony is the result of reliable principles and methods. In his evaluation of the scene photos Bloch opined that the tree branch had been dead, dying, and decaying for several years based on the way that the wood shattered when it landed. *See* Def. Ex. E, at 2. Bloch further stated that based on the photos, the branches would not be so brittle, and would not have broken into such small pieces if the limb had been alive when it fell. *See id*. Bloch's methodology in this case amounted to examining the relevant data and facts (the photos of the branches) and applying his arboreal expertise and knowledge to them in order to draw conclusions. *See id*. at 3 ("My opinions and conclusions were developed, and this report prepared in conformity with [sic] standard arboreal practices, and my expertise and experience as a consulting arborist."). Bloch's methodology (his analyzing the relevant photos using his arboreal expertise and experience) was a reasonable method of determining whether the tree branches

---

[3] MPD incident reports clearly indicate that photos of the accident scene were taken. *See* Def. Ex. E, at 9.

which struck Plaintiff were alive or dead. *See* 526 U.S. at 153-54. Defendant attempts to discredit Bloch's opinions by saying that his conclusory opinions are sparse outside of the relevant inquiry of whether the branch was alive or dead when it struck Plaintiff. Beyond this, Bloch has contemporaneously submitted a supplemental affidavit further setting forth the methodology he relied on in formulating his conclusions. *See* Ex. F, Affidavit of Lew Bloch. [4] Plaintiff's expert testimony thus far is proffered solely to establish a standard of care and it has done that based on proper methodological application.

Finally, Bloch has reliably applied the relevant principles and methods to the facts of this case. In reaching his conclusions, Bloch has reliably applied his arboreal expertise to the photographs depicting the scene of the occurrence. *See* Def. Ex. E. Bloch notes that based on what he observed in the photos, that only a dead tree limb would shatter the way that this one did upon impact. *See id.* at 2. Furthermore, based on the exact way that the limb shattered, Bloch determined that the limb had likely been dead for some time and that had regular inspections and maintenance been performed by NPS, the hazard would have been abated. *See id.*

Beyond this Defendant argues that Bloch dismisses the context of this occurrence by concluding that despite the weather conditions at the time, the limb would not have fallen if it were alive and healthy. This is not a dismissal of the weather conditions, rather it is an acknowledgement that the conditions at the time of the occurrence, which have already been discussed at length, were nothing out of the ordinary for a storm in the D.C. area and would not have caused a healthy tree limb of this size to fall.

---

[4] Bloch indicates that his conclusions are based both in his expert experience and the fact that live branches display qualities, such as strength, flexibility, and stability, that are inconsistent with those observed in the photos of the debris. *See* Ex. F.

Defendant's assertion that Bloch's expert analysis in fatally deficient under Rule 702 is unconvincing. Bloch applied his extensive arboreal knowledge and expertise to the conditions depicted in the scene photos. In doing this Bloch reasonably ascertained that the branches in the photos had been dead, decaying, or dying for several years based upon the way that the limbs shattered upon impact. Given that no party to this litigation is in physical possession of the tree and the fact these photos are the only reliable evidence we have depicting the limbs which struck Plaintiff, Bloch's methodology to determine whether the tree was alive or dead was reasonable in this case. Accordingly, Bloch's expert analysis conforms to the requirements of 702 and effectively establishes a standard of care which Defendant breached. Summary judgment is not available to the Defendant as disputes as to material fact regarding competing expert opinions still exist.

## CONCLUSION

For all of the above reasons, the Defendant's Motion for Summary Judgment should be denied.

Respectfully Submitted,

**PRICE BENOWITZ, LLP**

By:      */s/ John J. Yannone*
John J. Yannone, Esq. (#04396)
John@PriceBenowitzlaw.com
Price Benowitz, LLP
409 7th Street, NW, Suite #200
Washington, D.C. 20004
Phone:  (202) 417-6015
Fax:  (301) 244-6659
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 21st day of December, 2018, a copy of the foregoing Plaintiff's Memorandum Opposing Defendant United States of America's Motion for Summary Judgment was served by electronic mail and/or U.S. mail on all counsel of record.

/s/ John J. Yannone
John J. Yannone, Esq.